UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-CV-22405-MORENO/LOUIS

ROLAND CORPORATION,

    Plaintiff,

v.

INMUSIC BRANDS, INC.,

    Defendant.

_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR SANCTIONS

**THIS CAUSE** is before the Court on Plaintiff's Motion for Mandatory Sanctions for Violation of Local Rule 16.2(G)(2) and the Florida Mediation Act (the "Motion") (ECF No. 299). The present Motion follows Plaintiff's Motion to Enforce Settlement Agreement reached at the mediation (ECF No. 290; sealed at ECF No. 291) and Defendant's response in Opposition (ECF No. 293; sealed at ECF No. 295). Plaintiff's Motion for Sanctions asserts that Defendant violated several rules forbidding the disclosure of mediation communications by disclosing certain communications that took place during a court-ordered mediation in its response and exhibits thereto (ECF No. 299 at 1). Upon consideration of the Motion, response, and following oral argument on the Motion, the Court denies Plaintiff's Motion as explained below.

### I.    BACKGROUND

In this patent infringement suit, Plaintiff alleges that Defendant has infringed on eight different patents held by Plaintiff. This is one of two infringement suits pending between these parties; the other is pending in the District of Rhode Island, and in that suit, Roland is alleged to have infringed upon Defendant inMusic's patents. This suit originated from the Central District of

1

California, where it was filed in 2016; it was transferred to this District in 2017 upon stipulation of the Parties. Upon referral from the Honorable Federico A. Moreno, the undersigned conducted a *Markman* hearing and issued a Report and Recommendation on the Parties' disputed claims construction. The eight contested patents relate to electronic percussion instruments; relevant to this Motion, one of the inventions taught in Plaintiff's patent is for electronic cymbals. Defendant also sells electronic cymbals, individually and in kits that include percussion sets.

Pursuant to Court order, the Parties were required to attend mediation, and did so in December 2019. The day after mediation, the parties filed a Joint Notice of Settlement in Principle (ECF No. 281), representing that they had agreed in principle to settle the case in its entirety, and advising that they would file a dismissal stipulation within two weeks if a settlement agreement was executed. The Court dismissed and closed the case, retaining jurisdiction to enforce the terms of the settlement agreement for a period of six months (ECF No. 282).

Six weeks later, Plaintiff Roland sought leave to file under seal a motion to enforce settlement agreement. Plaintiff represented that it sought leave to file the motion under seal in order to protect commercially sensitive information, as well as to preserve the confidential nature of the settlement negotiations and draft settlement agreement (ECF No. 283). Defendant inMusic opposed the motion to seal; in a filed response, Defendant explained that it had sought to confer with Plaintiff in order to ascertain the need for filing under seal, but Roland had refused to share its anticipated motion or reveal what content it would disclose. After denying the motion for leave to file under seal, the Court later granted Roland's request on a motion for reconsideration, and Roland filed its motion to enforce the settlement agreement.

Plaintiff's Motion to Enforce seeks to enforce the result of the mediation—a signed handwritten agreement entitled "Term Sheet"—that Plaintiff characterizes as a settlement

2

agreement. Plaintiff attached the Term Sheet as an exhibit to its motion and typed its content into the body of its Motion, but redacted the specific price per cymbal memorialized in the Term Sheet. One of the terms of the settlement was inMusic's agreement to take a license to the two cymbal patents at issue in this case. In the months following the mediation, the Parties had swapped drafts of a written settlement agreement and a licensing agreement for the two patents, but negotiations broke down over whether the royalty payments, under the anticipated licensing agreement, were to be calculated on a per cymbal basis, or per kit sold by Defendant, regardless of the number of cymbals per kit.

Plaintiff's Motion to Enforce describes the parties' respective positions on the term. Plaintiff avers that the Parties both understood what was meant by "cymbal" based on the history of the litigation, and that it meant each cymbal. Defendant averred that because its sales of cymbals are rarely individual, and generally part of a kit of instruments, calculating the number of cymbals for which it be required to pay a royalty under Plaintiff's interpretation would be extremely difficult. Roland contends that it "rejected Defendant's proposal to change the monetary term" of the Term Sheet (ECF No. 290 ¶ 8).

Defendant inMusic responded in opposition, supporting its opposition with the declaration of its General Counsel Byron McMasters (ECF No. 293). Mr. McMasters described in his declaration the steps immediately preceding the parties' entry into the Term Sheet as his basis for perceiving that Roland had placed paramount value on one term of the settlement, that is, the joint press release that the parties drafted on the last page of the Term Sheet, announcing that inMusic would take a license from Roland. He further explained that Defendant agreed to the license and royalty payments because it "considered the term to be of nominal monetary value." (ECF No. 293-1). If the royalty were to apply per cymbal, McMasters explains, it would substantially raise

the cost of the cymbal disproportionately to its value to the kit as a whole; also, he avers that inMusic does not presently track sales in a manner that would easily enable inMusic to calculate the royalty due under Roland's interpretation of the agreement.

While the merits of that dispute are separately pending in Plaintiff's Motion to Enforce, Plaintiff now[1] moves to sanction Defendant for disclosing mediation communications via McMaster's declaration. The relief Plaintiff seeks includes an order striking Defendant's Response to the Motion to Enforce, fees incurred in pursuit of this motion, as well as fees and costs incurred in attending mediation; and granting Plaintiff's motion to enforce settlement agreement.

## II. ANALYSIS

Plaintiff's Motion invokes several rules prohibiting the disclosure of mediation communications. Local Rule 16.2(g)(2) generally prohibits the disclosure of mediation communications. Specifically, S.D. Fla. L.R. 16.2(g)(2) provides the following:

> (2) *Restrictions on the Use of Information Derived During the Mediation Conference*. All proceedings of the mediation shall be confidential and are privileged in all respects as provided under federal law and Florida Statutes § 44.405. The proceedings may not be reported, recorded, placed into evidence, made known to the Court or jury, or construed for any purpose as an admission against interest.

Similarly, the Florida Mediation Act, at Fla. Stat. § 44.102(3) prohibits parties from disclosing mediation communications. The statute provides the following:

> Each party in a court-ordered mediation proceeding has a privilege to refuse to disclose, and to prevent any person present at the proceeding from disclosing, communications made during such proceeding. Notwithstanding the provisions of s. 119.14, all oral or written communications in a mediation proceeding, other than an executed settlement agreement . . . shall be confidential and inadmissible as evidence in any subsequent legal proceeding, unless all parties agree otherwise . . . .

---

[1] This is Plaintiff's third Motion for Sanctions.

4

Finally, Fla. Stat. § 44.405(1) provides that "[e]xcept as provided in this section, all mediation communications shall be confidential. A mediation participant shall not disclose a mediation communication to a person other than another mediation participant or participant's counsel."

Despite the aforementioned rules, however, courts have widely recognized that privileges may be waived through the act of issue injection, in which "the party asserting the privilege placed information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would have been manifestly unfair to the opposing party." *Pitney-Bowes, Inc. v. Mestre*, 86 F.R.D. 444, 446–47 (S.D. Fla. Apr. 14, 1980) (quoting *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)). Ultimately, allowing the waiver of privileges through issue injection aims to prevent parties from hiding behind the shield of privilege to prevent the opposing party from effectively challenging their evidence and allegations. *See Strong v. Geico Gen. Ins. Co.*, 2017 WL 1006457, at *3 (M.D. Fla. Mar. 15, 2017) (citing *Savino v. Luciano*, 92 So. 2d 817, 819 (Fla. 1957)). Otherwise, there is no way to redress the serious danger that the privilege-holder's assertions are false or misleading. *See Siegmund v. Xuelian Bian*, No. 16-CV-62506-FAM, 2018 WL 3725775, at *11 (S.D. Fla. Aug. 1, 2018).

Accordingly, courts have consistently recognized the admissibility of mediation communications when a party "raise[s] an issue which necessarily requires an evaluation of how the settlement was conducted[.]" *Carles Const., Inc. v. Travelers Cas. & Sur. Co. of Am.*, 56 F. Supp. 3d 1259, 1274 (S.D. Fla. Mar. 31, 2014). *See Cooper v. Meridian Yachts, Ltd.*, No. 06-61630-CIV, 2008 WL 2229552, at *11 (S.D. Fla. May 28, 2008) ("[B]ecause [Plaintiffs] must necessarily demonstrate the reasonableness of their settlement . . . they have waived claims of privilege with respect to the evidence necessary to evaluate that issue, and [Plaintiffs'] documents

concerning the substance and motivation behind the settlement . . . must be released . . . ."); *Strong*, 2017 WL 1006457, at *4 ("Plaintiff has asserted claims in the Complaint that specifically relate to Defendant's settlement offers, or lack thereof. As such, the proof of the Plaintiff's claims and Defendant's defense of those claims will necessitate the introduction of evidence concerning any settlement offers.").[2] Thus, whether Plaintiff waived the mediation communications privilege, and by extension, whether Defendant successfully refrained from sanctionable behavior with its disclosure of those communications, depends on the Court's finding that Plaintiff's Motion to Enforce requires an examination of the communications as they relate to the formation and enforceability of the Term Sheet as a settlement agreement.

Plaintiff's Motion to Enforce is "governed by the rules for interpretation of contracts." *Vision Palm Springs, LLLP v. Michael Anthony Co.*, 272 So. 3d 441, 444 (Fla. 3rd DCA 2019) (quoting *Robbie v. City of* Miami, 469 So. 2d 1384, 1385 (Fla. 1985)). "[A]n enforceable contract requires mutual assent as to sufficiently definite essential terms." *Kolodziej v.* Mason, 774 F.3d 736, 744 (11th Cir. 2014) (citing *Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 607 F.3d 742, 746 (11th Cir. 2010)). A showing of mutual assent as to each sufficiently definite essential term is established by objective, external evidence that the parties said the same thing regarding each essential term. *Vision Palm Springs,* 272 So. 3d at 444 (citing *Robbie*, 469 So. 2d at 1385). A

---

[2] Plaintiff argues that Defendant's disclosure of mediation communications was wrongful as Plaintiff itself did not disclose any confidential communications. Specifically, Plaintiff relies on *Donahoe v. Arpaio* and argues that the private post-mediation settlement discussions Plaintiff disclosed are not the sort of mediation communications for which a disclosure is prohibited. 872 F. Supp. 2d 900 (D. Ariz. 2012). Plaintiff's argument, however, exclusively revolves around the applicability of the "express waiver" doctrine, in which a party waives a privilege by voluntarily disclosing communications protected by that privilege. *See State v. Topps*, 142 So. 3d 978, 981 (Fla. 4th DCA 2014) (citing *McKinlay v. McKinlay*, 648 So. 2d 806, 810 (Fla. 1st DCA 1995)). As the Court discusses above, a waiver of privilege also occurs by placing the confidential information "at issue". *See Carles Const.*, 56 F. Supp. 3d at 1273–74.

proper evaluation of the aforementioned objective evidence includes a "consider[ation] [of] all of the attendant circumstances in th[e] case[,]" *Kolodziej*, 774 F.3d at 742—indeed, "the circumstances in which the words are used is always relevant and usually indispensable." *Id*. (quoting *N.Y. Trust Co. v. Island Oil & Transportation Corp.*, 34 F.2d 655, 656 (2d Cir. 1929)). Thus, "[t]he parties should be prepared to introduce extrinsic material relevant to the issue of whether the Term Sheet is a sufficiently definite contract." *West Town Plaza Associates, Ltd. v. Citi Trends, Inc.*, No. 18-22150-CIV-ALTONAGA/Goodman, 2019 WL 2010238, at *9 (S.D. Fla. Mar. 26, 2019). *See Robbie*, 469 So. 2d at 1386 (evaluating mutual assent through an assessment of "the transcripts of the commission meeting, a lengthy resolution by the commission adopting the settlement and stating its terms, a stipulation and ordered prepared by the city, releases, and letters acknowledging the settlement.").

Plaintiff, in support of its Motion to Enforce, argued that the Parties mutually assented as to all essential terms in the Term Sheet, including the disputed royalty scheme (ECF No. 290 at 7–9). Having placed evidence of mutual assent at issue, Plaintiff cannot avoid this Court's consideration of the evidence contained in the contested declaration as it relates to mutual assent. Because an evaluation of mutual assent as to all essential terms requires an analysis of "all of the attendant circumstances in this case[,]" *Kolodziej*, 774 F.3d at 742, Plaintiff cannot use the mediation communications privilege to lighten its burden and preclude the fact-finder from examining the communications that are relevant to a determination of that assent. *Carles Const.*, 56 F. Supp. 3d at 1274 (S.D. Fla. 2014).[3]

---

[3] Plaintiff relies on *Carpaneda v. Quayside Place Partners, LLP*, for the proposition that this Court may enforce a mediation settlement agreement without finding a waiver of the mediation communications privilege. No. 09-20740-CIV, 2010 WL 2696958 (S.D. Fla. July 7, 2010). Plaintiff, however, fails to recognize that the Court's non-mention of a waiver of the mediation

Because Plaintiff's Motion necessarily puts at issue circumstances surrounding the formation of the agreement it seeks to enforce, it has waived the privilege with respect to the mediation communications relevant to mutual assent. Defendant's disclosures accordingly have not violated the privilege.

For the foregoing reasons, Plaintiff's Motion for Sanctions (ECF No. 299) is **DENIED**.

**DONE and ORDERED** in Chambers at Miami, Florida this 3rd day of July, 2020.

_____
**LAUREN F. LOUIS**
**UNITED STATES MAGISTRATE JUDGE**

---

communications privilege in *Carpaneda* logically follows from the fact that, in stark contrast to this case, neither party disclosed nor sought the disclosure of mediation communications. *Id.*