**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 1:17-cv-22405-MORENO/LOUIS**

ROLAND CORPORATION, a Japanese
Corporation,

      Plaintiff,

         v.

INMUSIC BRANDS, INC., a Florida
Corporation,

      Defendant.

**PLAINTIFF ROLAND CORPORATION'S MOTION**
**FOR PARTIAL SUMMARY JUDGMENT OF INFRINGEMENT**

**REQUEST FOR ORAL HEARING**

4823-3493-1964.3

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................... 2

    A. Procedural History ................................................................................... 2

    B. Patents at Issue ......................................................................................... 2

        1. Drum Patents ................................................................................. 2

            a. 535 Patent ........................................................................... 3

            b. 458 Patent ........................................................................... 3

        2. Cymbal Patents ............................................................................. 4

            a. 989 Patent ........................................................................... 4

            b. 885 patent ........................................................................... 4

    C. Accused Products ..................................................................................... 4

        1. Drum Products ............................................................................... 5

        2. Cymbal Products ........................................................................... 5

III. LEGAL STANDARDS ....................................................................................... 5

    A. Summary Judgment .................................................................................. 5

    B. Direct Infringement .................................................................................. 6

    C. Contributory Infringement ....................................................................... 6

    D. Claim Constructions ................................................................................ 7

    E. Defendant's Technical Expert Opinion Should be Disregarded Because He Failed to Consider the Claim Construction in the R&R. ........................... 7

IV. THE COURT SHOULD GRANT PARTIAL SUMMARY JUDGMENT OF INFRINGEMENT ................................................................................................ 8

    A. Roland Owns The Asserted Patents ......................................................... 8

    B. Defendant's Sale And Importation Of Accused Products ....................... 8

    C. Drum Patents ............................................................................................ 8

        1. 535 Patent ...................................................................................... 8

i

|  |  | a. | Preamble, "A head for a percussion instrument, the head comprising" | 8 |

|  |  | b. | "a frame and a net-like material comprising multiple net members, each net member supported by said frame, said net-like material having openings through which air may pass" | 8 |

|  | 2. | 458 Patent | 10 |

|  |  | a. | Preamble, "A percussion instrument, comprising:" | 10 |

|  |  | b. | "a generally hollow body having an opening into a body interior" | 10 |

|  |  | c. | "a generally flexible, net-like material disposed in a tensioned state across the opening of the generally hollow body, the net-like material defining a percussion surface for receiving a percussion impact, the net-like material also having openings of a size sufficient to allow air to pass therethrough, upon receiving a percussion impact on the percussion surface" | 11 |

|  |  | d. | "a sensor supported by said generally hollow body, for providing an electronic signal in response to a percussion impact on the percussion surface of the generally flexible, net-like material." | 12 |

| D. | Cymbal Patents | | | 13 |

|  | 1. | 989 Patent | 13 |

|  |  | a. | Preamble, "first frame" | 13 |

|  |  | b. | "a striking sensor detecting the strike transmitted to said first frame" | 14 |

|  |  | c. | "a second frame supporting said first frame from below, having an attachment hole with a pivotal joint" | 15 |

|  |  | d. | "a rotation stopper member coupled to the second frame for preventing said first frame from circumferentially rotating about a pole of a stand, said pole being inserted into said |

attachment hole, said attachment hole located in said rotation stopper member, said pivotal joint being rockably fitted into said rotation stopper member with resulting play.” ........................................................................................... 16

2.     885 Patent ........................................................................................... 18

a.     Preamble and “a frame having an upper surface with an outer peripheral edge;” ................................................................ 18

b.     “a cover over the upper surface of the frame and defining a striking surface for receiving a strike;” ........................................ 18

c.     “a striking sensor supported on the frame for providing an electronic signal corresponding to a strike on the striking surface;” ....................................................................................... 19

d.     “a support structure to pivotally support the frame on a stand for pivotal motion of the frame relative to the stand; and” .................................................................................................. 19

e.     “a rotation stopper operatively coupled to the frame, for inhibiting rotation of the frame relative to the stand, when the frame is mounted on the stand for pivotal motion.” ............... 20

V.     CONCLUSION ............................................................................................... 20

4823-3493-1964.3

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)........................................................................................................6

*Becton Dickinson & Co. v. C.R. Bard, Inc.*,
    922 F.2d 792 (Fed. Cir. 1990)........................................................................................6

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
    424 F.3d 1293 (Fed. Cir. 2005)......................................................................................7

*Innovention Toys, LLC v. MGA Entm't, Inc.*,
    637 F.3d 1314 (Fed. Cir. 2011)......................................................................................6

*L & W, Inc. v. Shertech, Inc.*,
    471 F.3d 1311 (Fed. Cir. 2006)......................................................................................6

*Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*,
    725 F.3d 1377 (Fed. Cir. 2013)......................................................................................7

*Veliz v. Rental Serv. Corp. USA, Inc.*,
    313 F. Supp. 2d 1317 (M.D. Fla. 2003).........................................................................6

*Young v. City of Palm Bay*,
    358 F.3d 859 (11th Cir. 2004) .......................................................................................6

**Federal Statutes**

35 U.S.C.
    § 271(a) ...........................................................................................................................6
    § 271(c) ........................................................................................................................6, 7

**Other Authorities**

Fed. R. Civ. P. 56(a) ..............................................................................................................5

iv

## I.      INTRODUCTION

Plaintiff Roland Corporation moves for partial summary judgment of infringement of U.S. Patent Nos. 6,271,458 ("458 Patent")(EX.[1] 3), 6,756,535 ("535 Patent")(EX. 5), 6,632,989 ("989 Patent")(EX. 4),  and  6,881,885  ("885 Patent")(EX. 6), (collectively "Asserted Patents").[2] Defendant either (a) does not argue that any limitation is missing from the accused products, or (b) only raises a dispute that is contrary to the Magistrate Judge's Report and Recommendation on claim construction or black letter patent law.[3] Accordingly, summary judgment of infringement on the patent claims discussed in this motion is appropriate.



The Asserted Patents relate to electronic cymbal and drum technology. The accused products are both drum "kits" that contain a variety of electronic drums and cymbals, as well as drums and cymbals sold individually. An example of an accused product, the DM10 MKII Pro Kit, which contains multiple drums and cymbals is shown to the right.

The 989 and 885 Patents are the asserted "Cymbal Patents." They disclose and claim technology that senses strikes to the surface or edge of an electronic cymbal and also prevents an electronic cymbal mounted on a stand from rotating excessively when struck.

The 458 and 535 Patents are the "Drum Patents." They describe an electronic percussion instrument with an open mesh head made of a "net-like raw material" that allows a drummer to strike the electronic drum without producing any significant acoustic sound, but allowing the user to enjoy the feeling of striking acoustic drums.[4] The Drum Patents describe that electronic

---

[1] References to Exhibits identified by "EX. _" are to exhibits in the Index of Exhibits (EX. 64).

[2] The Asserted Patents and other exhibits are identified in the Index of Exhibits filed herewith. In this memorandum Roland analyzes infringement of 458 Patent Claim 6 for products in Lehrman Ex. 4 (EX. 11); and 535 Patent claim 19 for the products in Lehrman Ex. 3 (EX. 10); 989 Patent claim 1 for the products identified in Lehrman Ex. 7 (EX. 13); 885 Patent Claim 30, for products in Lehrman Ex. 6 (EX. 12).

[3] Roland objected to various claim constructions in the R&R. If Roland's objections are incorporated into a final claim construction ruling, Roland would assert additional claims.

[4] *See, e.g.*, 535 Patent at 2:32-38 (EX. 5); and 458 Patent at 2:31-37 (EX. 3).

4823-3493-1964.3

percussion instrumental systems can "simulate a percussion instrument such as [an] acoustic drum sounding musical tone."[5]

## II.   FACTUAL BACKGROUND

### A.   Procedural History

Roland filed this patent infringement case on August 19, 2016, and the case was eventually transferred to this Court. The parties held a hearing to construe the meaning of disputed claim terms and the Magistrate Judge issued a Report & Recommendation construing the disputed terms. (D.E. 252, "R&R"). SMF[6] 1. Both parties filed objections (D.E. 254, 255), but the District Court has not yet issued a ruling concerning the objections. SMF 2. For purposes of this motion, Roland applies the Magistrate Judge's relevant claim constructions from the R&R. If rulings on Roland's objections to the R&R are sustained, Roland would assert additional claims.

The parties initially exchanged expert reports before any claim construction ruling issued. Pursuant to the Scheduling Order Setting Trial (D.E. 351), Roland submitted a supplemental technical expert report of Dr. Lehrman on August 16, 2021 applying the R&R's claim constructions. EX. 9. SMF 3.

inMusic's technical expert, Dr. Kytomaa, never updated his expert report to consider theR&R's claim construction. Kytomaa Tr. 30:1-30:3 (EX. 56). SMF 4. Dr. Kytomaa admitted that all his opinions about non-infringement are in his expert report and he has not provided any supplemental report regarding non-infringement. *Id*. 29:2-30:3, SMF 5. Dr. Kytomaa also admitted that if he had applied the R&R's claim constructions, his analysis would "have to be different." *Id*. 45:3-45:22. SMF 6. Dr. Kytomaa made various admissions about infringement that are cited in this brief. In addition to admissions of infringement made by Dr. Kytomaa, inMusic's product development manager, David Gill, also made infringement admissions. (EX. 52, 55)

### B.   Patents at Issue

As indicated in Defendant's Responses to Roland's First Set of Interrogatories, Interrogatory 1 (EX. 58), Defendant was aware of the Drum Patents no later than November 14, 2007, and the Cymbal Patents no later than March 2011. SMF 7.

#### 1.   Drum Patents

---

[5] *See, e.g.*, 535 Patent at 1:18-21 (EX. 5); and 458 Patent at 1:16-19 (EX. 3).
[6] "SMF" refers to numbered facts in the accompanying "Statement of Material Facts."

inMusic, on its Alesis website[7] touts the same benefits of Roland's Drum Patents: "It's equipped with the exclusive Alesis tightly woven black mesh drum heads that dampen acoustic noise and provide a singularly natural drumming experience. Players will immediately notice the **improved feel, response, and reduction in acoustic noise**, making the surprisingly affordable DM10 Studio Mesh Kit ideal for quiet late-night practice sessions, as well as live performance and studio recording." (emphasis added).

### a.    535 Patent

The 535 Patent was filed on April 30, 2001, and issued on June 29, 2004. SMF 9. The 535 Patent contains thirty-three claims, including independent claims 1, 7, 13, 19, and 23. Based on the R&R, Roland asserts Claims 19-21 and 23, apparatus claims which are directed to a combination of certain structural features of a <u>drum head</u>. Claim 19 of the 535 Patent is directed to a <u>percussion instrument</u> as set forth below:

> 19. A head for a percussion instrument, the head comprising a frame and a net-like material comprising multiple net members, each net member supported by said frame, said net-like material having openings through which air may pass.

### b.    458 Patent

The 458 Patent was filed on September 22, 1999, and issued on August 7, 2001. SMF 10. Claims 1-5 and 17 are apparatus claims and are directed to a combination of certain structural features of a <u>drum head</u>. Claims 6-10 are also apparatus claims, but are directed to a combination of certain structural features of an <u>electronic percussion instrument</u>, including a sensor for providing an electronic signal in response to a percussion impact. Based on the R&R, Roland asserts claims 1, 2, 4, 6, 7, 9, 17. Claim 6 of the 458 Patent is set forth below:

> 6. An electronic percussion instrument, comprising:
> a generally hollow body having an opening into a body interior;
> a generally flexible, net-like material disposed in a tensioned state across the opening of the generally hollow body, the net-like material defining a percussion surface for receiving a percussion impact, the net-like material also having openings of a size sufficient to allow air to pass therethrough, upon receiving a percussion impact on the percussion surface; and
> a sensor supported by said generally hollow body, for providing an electronic signal in response to a percussion impact on the percussion surface of the generally flexible, net-like material.

---

[7] See, e.g., https://www.alesis.com/products/view2/dm10-studio-mesh (EX. 59). SMF 8.

3

### 2.   Cymbal Patents

#### a.   989 Patent

The 989 Patent and the 885 Patent are cymbal-related patents ("Cymbal Patents") that have the same specification. The 989 Patent was filed on August 22, 2001, and issued on October 14, 2003. SMF 11. Based on the R&R, Roland asserts claims 1-3 of the 989 Patent against inMusic. The asserted independent claim 1 is reproduced below:

> 1. An electronic pad receiving a strike, detecting the strike and outputting a signal representative of the strike comprising:
> a first frame;
> a striking sensor detecting the strike transmitted to said first frame; and
> a second frame supporting said first frame from below, having an attachment hole with a pivotal joint; and
> a rotation stopper member coupled to the second frame for preventing said first frame from circumferentially rotating about a pole of a stand, said pole being inserted into said attachment hole, said attachment hole located in said rotation stopper member, said pivotal joint being rockably fitted into said rotation stopper member with resulting play.

#### b.   885 patent

The 885 Patent was filed on July 18, 2003 and issued on April 19, 2005. SMF 12. Based on the R&R, Roland asserts claims 28-34 and 43-47 against inMusic. The asserted 885 Patent claims are similar in some respects to the 989 Patent claims, as the patents are in the same family. For illustrative purposes, Claim 30 of the 885 Patent is set forth below:

> 30. An electronic pad for mounting on a stand, receiving a strike, detecting the strike and outputting a signal representative of the strike, the electronic pad comprising:
> a frame having an upper surface with an outer peripheral edge;
> a cover over the upper surface of the frame and defining a striking surface for receiving a strike;
> a striking sensor supported on the frame for providing an electronic signal corresponding to a strike on the striking surface;
> a support structure to pivotally support the frame on a stand for pivotal motion of the frame relative to the stand; and
> a rotation stopper operatively coupled to the frame, for inhibiting rotation of the frame relative to the stand, when the frame is mounted on the stand for pivotal motion.

### C.   Accused Products

While there are a large number of Accused Products, almost all the Accused Products fall under four categories: (1) cymbals with a peripheral edge sensor; (2) cymbals without a peripheral

4

edge sensor; (3) single-zone drum pads; and (4) dual-zone drum pads. Given the large number of accused products, they are identified by category in EX. 1. SMF 13. Gill 30(b)(6) Deposition Exhibit 345 (EX. 54) produced by inMusic identifies the years the products were sold. *See* Gill 30(b)(6) Tr. 11:6-16:10 (EX. 52). SMF 14. For each asserted patent, Dr. Lehrman's expert report identifies a numbered exhibit that identifies all accused products that infringe the asserted patent and lettered exhibits identify where the relevant structures for each product are found.

### 1.    Drum Products

All of the accused drum products infringe 535 Patent claims 19-21, and 23 and 458 Patent claims 1, 2, 4, 6, 7, 9, and 17.  *See* Lehrman Exs. 3 & 4, (EX. 10, 11). SMF 15.

"Single-Zone Drum Pads" refers to Accused Products that are designed to function primarily as bass drum pads or kick pads. All the Accused Products in this category have a single percussion detector or head sensor. Additionally, all the Accused Products in this category have a cushioning member in contact with both the sensor and the drum head.

"Dual-Zone Drum Pads" refers to Accused Products that are designed to function primarily as snare drums or toms. All the Accused Products in this category have two percussion detectors or head sensors. Additionally, all the Accused Products in this category have a central percussion detector or head sensor which is in contact with a central area of the drum head.

### 2.    Cymbal Products

"Cymbals with a Peripheral Edge Sensor" refers to Accused Products that have a striking sensor on the edge portion of the cymbal as well as a striking sensor on the ride, bell, or cup portion of the cymbal. This category also encompasses the Accused Products that have choke sensors on the edge portions, as these choke sensors are also capable of functioning as strike sensors. These products infringe 989 Patent claims 1-3 and 885 Patent claims 28-34 and 43-47.

"Cymbals without a Peripheral Edge Sensor" refers to Accused Products that have a striking sensor on the ride, bell, or cup portion of the cymbal, but do not have a sensor on the edge portion of the cymbal. These products infringe 989 Patent claims 1-3 and 885 Patent claims 30-32 and 43-45. *See* Lehrman Exs. 6 & 7 (EX. 12, 13). SMF 16.

## III.    LEGAL STANDARDS

### A.    Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "When a patentee with the burden of proof seeks summary judgment of infringement, it must make a prima facie showing of infringement as to each accused device." *L & W, Inc. v. Shertech, Inc.*, 471 F.3d 1311, 1318 (Fed. Cir. 2006). Upon satisfaction of that initial burden, the burden of proof shifts to the nonmoving party to come forward with "specific facts" showing that there is a genuine issue for trial. *See Veliz v. Rental Serv. Corp. USA, Inc.*, 313 F. Supp. 2d 1317, 1322 (M.D. Fla. 2003). The nonmoving party "may not rest upon the mere allegations or denials" of its pleadings, and "a mere scintilla" of evidence supporting the nonmoving party will not suffice. *Id.* (citations omitted); *see also Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004). The Court reviews evidence in the light most favorable to the non-moving party. *Veliz*, 313 F. Supp. 2d at 1322.

### B.    Direct Infringement

A party infringes a patent when it "makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention" without authority during the patent's term. 35 U.S.C. § 271(a). An accused product literally infringes a patent claim when the product meets every limitation of the claim. *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 796 (Fed. Cir. 1990).

"A determination of infringement involves two steps: First, the court determines the scope and meaning of the asserted patent claims. The court then compares the properly construed claims to the allegedly infringing device to determine whether all of the claim limitations are present, either literally or by a substantial equivalent." *Innovention Toys, LLC v. MGA Entm't, Inc.*, 637 F.3d 1314, 1318–19 (Fed. Cir. 2011) (affirming summary judgment of infringement). Claim construction is a question of law; infringement is a question of fact. *Id.* at 1319. "Accordingly, a court may determine infringement on summary judgment 'when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device.'" *Id.* (citation omitted).

### C.    Contributory Infringement

Under 35 U.S.C. § 271(c), a party is liable for infringement if he "offers to sell or sells within the United States or imports into the United States . . . a material or apparatus for use in

practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c). "In order to succeed on a claim of contributory infringement, in addition to proving an act of direct infringement, plaintiff must show that 'the combination for which its components were especially made was both patented and infringing' and that defendant's components have 'no substantial non-infringing uses.'" *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005) (quoting *Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1061 (Fed. Cir. 2004)).

### D. Claim Constructions

Magistrate Judge Louis issued an R&R on Claim Construction (D.E. 252). Both parties filed objections to the R&R (D.E. 254, 255), but the District Court has not ruled on them. The claim constructions used in this motion are the ones in the R&R. The relevant claim constructions are provided in EX. 2 for easy reference and are cited when applied to the applicable claims.

### E. Defendant's Technical Expert Opinion Should be Disregarded Because He Failed to Consider the Claim Construction in the R&R.

Defendant's technical expert, Dr. Kytomaa, admitted that all of his opinions about non-infringement are in his expert report and he has not provided any supplemental report regarding non-infringement. Kytomaa Tr. 29:2-30:3, EX. 56. Further, Dr. Kytomaa never updated his expert report to consider the R&R claim construction. *Id.* at 30:1-30:3. The deposition of Dr. Kytomaa was taken based on his expert report, and he is limited to the non-infringement positions he disclosed therein. "Rule 26 requires an expert witness to disclose an expert report that contains 'a complete statement of all opinions the witness will express and the basis and reasons for them.'" *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1381 (Fed. Cir. 2013) (quoting Fed. R. Civ. P. 26(a)(2)(B)(i)). "The purpose of the expert disclosure rule is to 'provide opposing parties reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.'" *Id.* (quoting *Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008)).

"Failure to comply with Rule 26(a) has significant consequences, including Rule 37's 'self-executing sanction.'" *Id.* (quoting Fed. R. Civ. P. 37(c), advisory committee notes). "An expert witness may not testify to subject matter beyond the scope of the witness's expert report unless the

7

failure to include that information in the report was 'substantially justified or harmless.'" *Id.* Given that Dr. Kytomaa did not apply the R&R's claim constructions, none of his opinions regarding any claim limitations impacted by claim construction should be considered.

## IV.   THE COURT SHOULD GRANT PARTIAL SUMMARY JUDGMENT OF INFRINGEMENT

### A.   Roland Owns The Asserted Patents

Roland owns the Asserted Patents. Tamura Dec. ¶ 2, EX. 7. SMF 17.

### B.   Defendant's Sale And Importation Of Accused Products

There is no dispute that Defendant sold and/or imported all of the Accused Products. *See* EX. 54 (Gill 30(b)(6) Deposition Exhibit 345 produced by inMusic identifying evidence regarding sale and importation of the Accused Products). SMF 18.

### C.   Drum Patents

As set forth in the accompanying Lehrman Declaration (EX. 8) and expert report (EX. 9) with Exs. 3 & 4 (EX. 10, 11) and product infringement charts, Exs. A-H, BB-DD, MM (EX. 14-21, 39-41, 50), all of the accused Drum Products meet every limitation of the asserted claims of the 458 and 535 Patents. SMF 19. To avoid summary judgment, Defendant must provide evidence which would be sufficient to require submission of the issue of infringement to a jury. While Defendant has attempted in its "Rebuttal Expert Report Of Harri Kytomaa, Pd.D., P.E. Regarding Non-Infringement" ("Kytomaa Report") (EX. 60) to identify non-infringement arguments, those arguments are baseless and Dr. Kytomaa never even attempted to apply the claim constructions in the R&R. Purported disputes are addressed below.

#### 1.   535 Patent

One of the 535 Patent claims asserted against Defendant is claim 19.

##### a.   Preamble, "A head for a percussion instrument, the head comprising"

Defendant purports to make non-infringement arguments regarding the 535 patent in Ex. 3 of the Kytomaa Report (starting at PDF page 88) (EX. 60). Defendant does not dispute that the accused products satisfy the preamble of 535 Patent claim 19:

| 19.0 | 19. A head for a percussion instrument, the head comprising | Each of the '535 accused products includes a head (**210**) for a percussion instrument. | This is a preamble, entitled to no weight. |
|---|---|---|---|

##### b.   "a frame and a net-like material comprising multiple net members, each net member supported by said frame, said net-

like material having openings through which air may pass"

For each of the accused products, Roland identified a frame (250) and a net-like material (220) comprising first and second (multiple) net members (220a, 220b), each supported by said frame (250), said net-like material (220) having openings through which air may pass (the net-like material 220 includes small openings therethrough).[8] An example is shown below.

"Net-like material" was construed in the R&R to be "an element that is similar in appearance to an open meshed fabric with openings through which air passes sufficient to reduce sound when the element is percussed." D.E. 252 at p. 25. SMF 21. The drum head in the accused products is an open meshed fabric with openings through which air passes to reduce sound when percussed.  Gill Tr. 92:21-93:6; 92:5-11 (EX. 55). SMF 22. Indeed, Dr. Kytomaa admits that the drum heads on the accused products allow air to pass.[9]



Pictured: Mesh head representative of mesh heads on all Accused Drum Products (Lehrman Rep. Ex. KK)

Dr. Kytomaa does not dispute that the accused products comprise a net-like material having openings through which air may pass[10], but only that the frame does not support the net members. Mr. Gill also admitted that the accused products comprise these limitations.[11] Dr. Kytomaa's only argument regarding this claim is that the accused products "do not meet this limitation because each net member is not supported by said frame." However, as shown in the images above, Dr. Kytomaa's argument is clearly inconsistent with the fact that the frame carries, and retains the net-like mesh material when lifted. The frame 250 plainly holds, pinches, and captures the net-like,

---

[8] Lehrman Ex. 3 at 19.1 (EX. 10); Ex. G at 3.5, 3.6 (EX. 20). SMF 20.

[9] Kytomaa Tr. 123:19-23; 106:2-16 (EX. 56). SMF 23.

[10] Dr. Kytomaa also testified that the accused products comprise this limitation. *See* Kytomaa Tr. 105:18-106:1 (EX. 56). SMF 24.

[11] Mr. Gill also conceded that the accused products comprise these limitations. *See* Gill Tr. 82:12-83:5, 103:2-104:1 (frame); 44:6-45:7 (net-like material); 210:22-211:11, 68:23-69:4, 90:13-25, 93:7-13 (first and second net members); 82:12-83:5, 103:2-104:1 (net members supported by frame); 71:16-73:15, 92:5-11, 92:21-93:6 (net-like material having openings through which air may pass) (EX. 55). SMF 25.

9

mesh material.[12]  The net-like mesh material in the above pictures is supported by the frame 250.

### 2.    458 Patent

One of the 458 Patent claims asserted against Defendant is claim 6.

#### a.    Preamble, "A percussion instrument, comprising:"

As set forth in Dr. Kytomaa's Report, Ex. 4 (starting at PDF page 102) (EX. 60), Defendant purports to make non-infringement arguments, including arguments regarding claim 6 beginning at PDF page 105. Defendant does not dispute that the accused products satisfy the preamble of 458 Patent claim 6:

| 6.0 | An electronic percussion instrument, comprising: | Each of the '458 accused products is an electronic percussion instrument. | This is a preamble, entitled to no weight. |
|---|---|---|---|

#### b.    "a generally hollow body having an opening into a body interior"

For each of the accused single-zone drum products, Roland identified a "generally hollow body" (as shown at 110), having an opening shown at 110b into a body interior 110a.[13]

"Generally hollow body" was construed in the R&R to be "a generally hollow cylindrical structure that encloses parts of the instrument."



Pictured:  8" Mesh Kick Pad from DM10 MKII Studio Kit disassembled

The body 110 in the accused products is a generally hollow cylindrical structure that encloses other parts of the instrument (including sensor 350). Dr. Kytomaa admits that the drum hoop is hollow and encloses other components.[14]  When assembled for use, the hoop part (on the left) fits onto the base part (on the right) to form a generally hollow body or housing that contains the sensor 350. The drum head 230 is tensioned over the assembled hollow body.

---

[12] Gill Tr. 82:12-83:5, 103:2-104:1. (EX. 55). SMF 26.
[13] Lehrman Ex. 4 at 6.1 (EX. 11); Ex. BB at 1.1. (EX. 39). SMF 27.
[14] Kytomaa Tr. 102:21-103:11; 103:21-104:2 (EX. 56). SMF 28.

In opposition, Dr. Kytomaa's Report applies an incorrect construction of "generally hollow body," which contradicts the R&R by requiring a cylindrical structure open on <u>both</u> ends with a predominantly hollow interior, and alleges that "the element identified as '110' is not a cylindrical structure open on both ends." Kytomaa Rebuttal Report at ¶¶ 116-118 (EX. 60). As the construction of "generally hollow body" does not require two open ends, Dr. Kytomaa's analysis is incorrect. Indeed, it is quite common for a generally hollow body to have at least one closed end (including typical drums, barrels, jars, cans or cups).

> ### c. "a generally flexible, net-like material disposed in a tensioned state across the opening of the generally hollow body, the net-like material defining a percussion surface for receiving a percussion impact, the net-like material also having openings of a size sufficient to allow air to pass therethrough, upon receiving a percussion impact on the percussion surface"

For each of the accused products, Roland identified a generally flexible, net-like material (220) in a tensioned state across the opening (110b) of the generally hollow body (110), the net-like material (220) defining a percussion surface (230) for receiving a percussion impact, the net-like material (220) also having openings of a size sufficient to allow air to pass therethrough, upon receiving a percussion impact on the percussion surface (230). Lehrman Ex. 4 at 6.2 (EX. 11); Ex. BB at 1.5, 1.7. (EX. 39).[15] As shown in the image above, the net-like material (220) is in tensioned state on the drum body 110,



**Pictured: 8" Mes**



**Pictured: Head of 8" Mesh Kick Pad from DM10 MKII Studio Kit**

---

[15] *See also* Lehrman Ex. PP-9 (mechanical testing video demonstrating flexibility of drum head material at 0:00, 0:25, 0:40) (EX. 61). SMF 29.

and is tensioned by tensioning pins 410.[16]

"Net-like material" was construed in the R&R to be "an element that is similar in appearance to an open meshed fabric with openings through which air passes sufficient to reduce sound when the element is percussed." D.E. 252 at p. 25. SMF 31. Also, disposed in a "tensioned state" was construed to be "placed or held up in a condition of being taut." *Id.* at 31. SMF 32. The drum head in the accused products is an open meshed fabric with openings through which air passes to reduce sound when percussed.[17] When assembled, the drum head is held taut on the drum body.[18] (See previous page, first image.) Indeed, Dr. Kytomaa admits that the drum heads on the accused products allow air to pass and is adjusted to be taut.[19]

Again, Dr. Kytomaa applied an incorrect construction of "tensioned state" to require "tension created by pins attached to exterior of the … generally hollow body," and his entire analysis is incorrect and irrelevant. It is undisputed (and Dr. Kytomaa does not dispute) that the accused products, indeed, have a net-like material that is held in a condition of being taut across an opening of a generally hollow cylindrical structure that encloses parts of the instrument, consistent with the R&R constructions.[20]

> **d.    "a sensor supported by said generally hollow body, for providing an electronic signal in response to a percussion impact on the percussion surface of the generally flexible, net-like material."**

For each of the accused single zone drum products, Roland identified a sensor (350) supported by said generally hollow body (110), for providing an electronic signal (510) in response to a percussion impact on the percussion surface (230) of the generally flexible, net-like material (220).[21] The sensor 350 is supported on the base of the generally hollow body 110 and is located within the interior of the hollow body 110 of the assembled drum product. *Id.* SMF 38.

---

[16] *See also* Lehrman Ex. PP-10 (mechanical testing video demonstrating tensioned (at 11:00 and 12:04) vs. non-tensioned (at 6:59 and 8:20) drum head material; adjustment of tension using tensioning pins (at 8:50)) (EX. 62). SMF 30.

[17] Gill Tr. 71:16-73:15; 92:21-93:6; 92:5-11. (EX. 55). SMF 33.

[18] Kytomaa Tr. 105:15-17; 124:24-125:6. (EX. 56). SMF 34.

[19] Kytomaa Tr. 123:19-23; 106:2-16. (EX. 56). SMF 35.

[20] Kytomaa Tr. 105:15-17; 102:21-103:11; 103:21-104:2. (EX. 56). SMF 36.

[21] Lehrman Ex. 4 at 6.3 (EX. 11); Ex. BB at 1.2, 1.7. (EX. 39); Ex. OO-2 at 3:37 (EX. 63). SMF 37.

12



Pictured: Sensor on 8" Mesh Kick Pad from DM10 MKII Studio Kit                    Pictured: Testing sensor response on 8" Mesh Kick Pad from DM10 MKII Studio Kit

The sensor 350 includes a piezoelectric device 330 that generates an electronic signal 510, in response to a percussion impact on the percussion surface of the net-like material of the drum head.[22] Dr. Kytomaa admits that the pictured drum product has just one transducer that generates electrical signals in response to vibrations.[23]

### D.    Cymbal Patents

As set forth in the accompanying Lehrman Declaration (EX. 8) and expert report (EX. 9) with Exs. 6 & 7 (EX. 12, 13) and product infringement charts, Exs. I-N, P-Z, EE-JJ, LL, and NN (EX. 22-38, 42-47, 49, 51), all of the accused Cymbal Products meet every limitation of the asserted claims of the 989 and 885 Patents. SMF 41. To avoid summary judgment, Defendant must provide evidence which would be sufficient to require submission of the issue of infringement to a jury. While Defendant has attempted in the Kytomaa Report to identify non-infringement arguments, those arguments are baseless and Dr. Kytomaa never even attempted to apply the claim constructions in the R&R. Purported disputes are addressed below.

### 1.    989 Patent

#### a.    Preamble, "first frame"

As set forth in Kytomaa Report's Ex. 7 (starting at PDF p. 148) (EX. 60), defendant purports to make non-infringement arguments regarding the 989 patent. Defendant does not dispute that the accused products satisfy the preamble or first limitation (reciting a first frame) of claim 1:

---

[22] Gill Tr. 77:22-78:6; 95:17-96:3; 96:18-97:12; 100:4-11 (EX. 55). SMF 39.
[23] Kytomaa Tr. 71:14-72:2; 73:19-74:6; 85:2-4; 143:9-12 (EX. 56). SMF 40.

4823-3493-1964.3

|   | Claims | Infringement Analysis | Non-Infringement Analysis |
|---|--------|----------------------|---------------------------|
| 1.0 | An electronic pad receiving a strike, detecting the strike and outputting a signal representative of the strike comprising:[2] | Each of the '989 accused products is an electronic pad receiving a strike, detecting the strike and outputting a signal representative of the strike. | This is a preamble, entitled to no weight. |
| 1.1 | a first frame; | Each of the '989 accused products comprises a first frame (**110**). | Roland bears the burden of proving infringement. |

Nevertheless, Dr. Lehrman explains that the accused products are electronic pads for receiving strikes as recited in the preamble, and the accused products have a first frame (110), as shown in the image in the next section. Lehrman Ex. 7 at 1.1. (EX. 13). SMF 42. Dr. Kytomaa also admits that the products have a frame. Kytomaa Tr. 126:7-127:3 (EX. 56). SMF 43.

  **b.**   **"a striking sensor detecting the strike transmitted to said first frame"**

Roland identified for each of the accused products a "striking sensor," as shown at 190.[24] "Striking sensor" was construed to be "a device that detects pressure and transmits a resulting signal." The striking sensor in the accused products is a piezo electric transducer that generates an



electrical signal in response to strikes, i.e., pressure, to the first frame (110). Gill Tr. 77:22-78:6; 95:17-96:3; 96:18-97:12; 107:5-18, 130:4-131:4 (EX. 55). SMF 45. In opposition, Kytomaa Report does not dispute that (**190**) senses strikes. Instead, Dr. Kytomaa uses an incorrect construction of "striking sensor" (Kytomaa Report at 10 (EX. 60)) and then makes incorrect conclusions about another component "120." Based on Dr. Kytomaa's incorrect definition of striking sensor, his testing was also inadequate, as his testing failed to strike the portion of the cymbals where "120" would detect strikes. Kytomaa Report at ¶ 130, p. 42 (EX. 60). Nevertheless, there is no dispute that **190** is a striking sensor that detects pressure and transmits a resulting signal.

  A screen shot of a video showing testing of the DM10 MKII Studio Kit product and the electrical signal generated by transducer **190** when frame 110 is struck to exert pressure on the

---

[24] Lehrman Ex. 7 at 1.2 (EX. 13); Ex. FF at 1.4 (EX. 43). SMF 44.



transducer is shown to the left. Lehrman Ex. FF at 1.6 (EX. 43).[25]

**c. "a second frame supporting said first frame from below, having an attachment hole with a pivotal joint"**

Roland identified for each of the accused products that it has a second frame (130) supporting said first frame (110) from below, having an attachment hole (140) with a pivotal joint (150).[26] As shown in the images below, disassembled second frame (130) is made up of multiple pieces and when assembled, supports the first frame from below, connecting to the first frame at the portion identified as 110e with screws.



Pictured: Second frame 130 disassembled



Pictured: Second frame 130 assembled supporting first frame 110

Pursuant to the R&R "second frame supporting said first frame" was construed to mean "an underlying structure that supports the first frame." In opposition, the Kytomaa Report fails to apply the claim construction of the R&R and makes irrelevant arguments about "a shoulder portion and an arm portion" based on inMusic's incorrect claim construction. Those irrelevant arguments should be rejected. Nevertheless during his deposition, Dr. Kytomaa admitted that a component such as 130a, 130b, pictured above, "is an element that supports the cymbal from below." Kytomaa Tr. 122:15-18. (EX. 56). SMF 48.

---

[25] *See also* Lehrman Ex. OO-2 at 0:53 (EX. 63). SMF 46.
[26] Lehrman Ex. 7 at 1.3 (EX. 13); Ex. FF at 1.3, 1.2. (EX. 43). SMF 47.

15

Further, attachment hole (140) is plainly a hole and around that hole is a pivotal joint (150) that allows a cymbal to pivot on a stand when struck, as will be explained in more detail in connection with the next limitation.

> **d.**    **"a rotation stopper member coupled to the second frame for preventing said first frame from circumferentially rotating about a pole of a stand, said pole being inserted into said attachment hole, said attachment hole located in said rotation stopper member, said pivotal joint being rockably fitted into said rotation stopper member with resulting play."**

As discussed in Lehrman Ex. 7 at 1.4 (EX. 13) and Ex. FF at 1.2, 1.5, (EX. 43) Roland identified for each of the accused products that it has a rotation stopper member (160). SMF 49. The R&R construed Rotation stopper to be "one or more elements that prevent rotation." Dr. Kytomaa applied an incorrect construction which renders his analysis incorrect and irrelevant. The rotation stopper is the assembly of parts shown at (160) and contains more than one piece. The rotation stopper is (160) coupled to the second frame (130) as shown.



The rotation stopper (160) prevents the first frame (110) from rotating about a pole of a cymbal stand on which the cymbal is mounted during typical use.[27]

The end of a pole or cymbal stand (210) is inserted into the attachment hole (140),[28] which is part of the rotation stopper member (160). The pivotal joint (150), which is a dome-like structure made of rubber,[29] is rockably fitted into the rotation stopper member (160), employing a part

---

[27] Lehrman Ex. 7 at 1.4 (EX. 13); Ex. FF at 2.2 (EX. 43); Gill Tr. 106:3-13 (EX. 55). SMF 50.
[28] Gill Tr. 110:7-15 (EX. 55). SMF 51.
[29] Gill Tr. 111:24-112:2; 113:18-114:4 (EX. 55). SMF 52.

4823-3493-1964.3

(160a)[30] that has a notch into which another part (160b) fits with a fin like structure.[31] When assembled, this structure allows play in the movement of the cymbal and allows it to pivot and rock,[32] but the assembly also prevents rotation of the cymbal about the pole's axis.[33] To assemble the pole and cymbal, a wingnut on the end of the pole is used to affix the pole to the stand.[34]



inMusic also provides customers Assembly Guide instructions on how to assemble the cymbals on a stand. Kytomaa Tr. 138:4-140:3 (EX. 56) & Dep. Ex. 421 (EX. 57). SMF 56.

Various accused products are "kits" such as the one pictured in the Assembly Guides and include stands with poles.



In addition, inMusic sells cymbals individually without poles or stands.  To the extent 989 patent claims require stands or poles, cymbals sold individually also <u>contributorily infringe</u> because they are especially adapted to be used with inMusic's infringing kits and there is no substantial non-infringing use of the cymbals, as the accused cymbal products all contain the "rotation stopper"

---

[30] Kytomaa Tr. 117:19-24 & 118:2-19 (EX. 56). SMF 53.
[31] Lehrman Ex. 7 at 1.4 (EX. 13); Ex. FF at 1.2, 1.5 (EX. 43); Kytomaa Tr. 110:9-112:2; 114:7-16 (EX. 56); Gill Tr. 109:4-17, 120:1-6 (EX. 55). SMF 53.
[32] Gill Tr. 123:10-22; 126:23-127:22 (EX. 55). SMF 54.
[33] Gill Tr. 120:7-21 (EX. 55). SMF 54.
[34] Gill Tr. 115:17-116:9 (EX. 55). SMF 55.

structure claimed in the 989 patent, and they must normally be placed on stands to be played. Kytomaa Tr. 135:19-137:8. (Ex. 56). SMF 57.

## 2.   885 Patent

The infringement analysis of 885 Patent Claim 30 is similar in some respects to the analysis of 989 Patent Claim 1. Both have limitations of a frame, a striking sensor, a rotation stopper, and the ability of the cymbal to pivot. As such, and in the interest of brevity, when the analysis for the 989 Patent is applicable, reference to that analysis will be provided.

### a.   Preamble and "a frame having an upper surface with an outer peripheral edge;"

As with 989 Patent Claim 1, as set forth in Kytomaa Report's Ex. 6 (starting at PDF page 132) (EX. 60), defendant purports to make non-infringement arguments. Defendant does not dispute that the accused products satisfy the preamble or first limitation (reciting a first frame) of the 885 Patent.

| 30.0 | An electronic pad for mounting on a stand, receiving a strike, detecting the strike and outputting a signal representative of the strike, the electronic pad comprising: | Each of the '885 accused products is an electronic pad for mounting on a stand (**210**), receiving a strike, detecting the strike and outputting a signal (**510**) representative of the strike. | This is a preamble, entitled to no weight. |
| --- | --- | --- | --- |
| 30.1 | a frame having an upper surface with an outer peripheral edge; | Each of the '885 accused products comprises a frame (**110**) having an upper surface (**110c**) with an outer peripheral edge (**110b**). | Roland bears the burden of proving infringement. |

Nevertheless, Dr. Lehrman explains that the accused products are electronic pads for receiving strikes as recited in the preamble, and the accused products have the claimed first frame (as discussed in connection with the 989 Patent), having an upper surface (110c) and an outer peripheral edge (110b), as shown in the image in the next section. Lehrman Ex. 6 at 30.1 (EX. 12). SMF 58.

### b.   "a cover over the upper surface of the frame and defining a striking surface for receiving a strike;"

Roland identified for each of the accused products a cover (170) over the upper surface (110c)



18

of the frame (110) and defining a striking surface (110a) for receiving a strike.[35]

The cover (170) is rubbery and inMusic admitted that it is a cover. Gill Tr. 117:6-11 (EX. 55). SMF 60. Indeed, using rubber on top of frame 110 feels better than striking the plastic of the frame. Gill Tr. 117:12-118:13 (EX. 55).

### c. "a striking sensor supported on the frame for providing an electronic signal corresponding to a strike on the striking surface;"

As with the 989 Patent element "b.", there is no genuine dispute that the accused products contain a striking sensor that detects pressure and generates a resulting signal. SMF 61. Again, Dr. Kytomaa applied the wrong claim construction of "striking sensor," rendering his analysis incorrect and irrelevant. Roland identified that for each of the 885 accused products a striking sensor (190). (*See* image for 989 patent element "b." showing (190) and (510)). Additionally, cymbals with a peripheral edge sensor also have a second striking sensor (120) (as shown in the previous section). SMF 62. Both striking sensors are supported on the frame (110) for providing an electronic signal (510) corresponding to a strike on the striking surface (110a). Each striking sensor (120, 190) detects vibration resulting from a strike to the striking surface (110a).[36] inMusic admitted with respect to (120) "If you strike it, it will play a different sound than if you struck the center area." Gill Tr. 130:24-25, and in context, Gill Tr. 129:11-130:25. (EX. 55). SMF 64.

### d. "a support structure to pivotally support the frame on a stand for pivotal motion of the frame relative to the stand; and"

Roland identified for the accused products that a support structure (270) pivotally supports the frame (110) on a stand (210) (shown in 989 Patent section "d.") for pivotal motion of the frame



---

[35] Lehrman Ex. 6 at 30.2 (EX. 12); Ex. FF at 1.1 (EX. 43). SMF 59.
[36] Lehrman Ex. 6 at 30.3 (EX. 12); Ex. FF at 1.1, 1.3 (EX. 43); Ex. OO-2 at 0:53 and 1:02 (EX. 63). SMF 63.

(110) relative to the stand (210). Lehrman. Ex. 6 at 30.4 (EX. 12); Ex. FF at 1.2, 1.5. (EX. 43). SMF 65.

989 Patent section "d." also explained how the end of a pole or cymbal stand (210) is inserted into the attachment hole (140), and the pivotal joint (150) is rockably fitted into the rotation stopper member (160), employing a part (160a) that has a notch into which another part (160b) fits with a fin like structure. When assembled, this structure allows play in the movement of the cymbal and allows it to pivot in all directions. [989 § "d." citations omitted for brevity]

> e.     **"a rotation stopper operatively coupled to the frame, for inhibiting rotation of the frame relative to the stand, when the frame is mounted on the stand for pivotal motion."**

Roland identified for the accused products that a rotation stopper (160) operatively coupled to the frame (110), for inhibiting rotation of the frame (110) relative to the stand (210), when the frame (110) is mounted on the stand (210) for pivotal motion. Lehrman. Ex. 6 at 30.5 (EX. 12); Ex. FF at 1.3 (EX. 43). SMF 66. Again, as described in 989 Patent, section "d." explained how the rotation stopped, which is coupled to the frame, inhibits rotation, when mounted on a stand and for brevity that discussion will not be repeated.

## V.    CONCLUSION

For the foregoing reasons, the Court should grant partial summary judgment of infringement.

## <u>REQUEST FOR ORAL HEARING</u>

Plaintiff requests a one hour oral hearing on this motion, as such a hearing would be helpful to the Court. A hearing would allow the parties to present visual aids demonstrating the technology at issue and to answer any questions the Court may have, ultimately expediting resolution of the motion.

Dated: September 28, 2021                    Respectfully submitted,


By: */s/ Laura Ganoza*

**FOLEY & LARDNER L.L.P**
Laura Ganoza, Esq. (Florida Bar No. 118532)
One Biscayne Tower, Suite 1900
2 South Biscayne Boulevard
Miami, Florida 33131
(305) 482-8400
(305) 482-8600 (fax)

20

*lganoza@foley.com*

Justin B. Uhlemann (FBN 568872)
*juhlemann@foley.com*
One Independent Drive
Suite 1300
Jacksonville, Florida 32225
Telephone: 904.359.2000
Facsimile: 904.359.8700

Victor de Gyarfas Esq. (*pro hac vice*)
555 South Flower Street, Suite 3300
Los Angeles, CA 90071
(213) 972-4500
(213) 486-0065 (fax)
*vdegyarfas@foley.com*

**Attorneys for Roland Corporation**

## CERTIFICATE OF SERVICE

I certify that the foregoing document is being filed this day, September 28, 2021, electronically through the ECF system by which the registered participants identified on the Notice of Electronic Filing should receive notice, including the following counsel of record:

*/s/ Laura Ganoza*
Laura Ganoza

## SERVICE LIST

Joseph Bain
Robert Rodriguez
**SHUTTS & BOWEN**
525 Okeechobee Blvd.
Suite 1100
West Palm Beach, Florida 33401
Tel:     561.650.8523
Fax:     561.650.8350
jbain@shutts.com
rrodriguez@shutts.com

Craig M. Scott (pro hac vice)
Christine K. Bush (pro hac vice)
**HINCKLEY, ALLEN & SNYDER, LLP**
100 Westminster Street, Suite 1500
Providence, Rhode Island 02903
Tel:    401.274.2000
Fax:    401.277.9600
cscott@hinckleyallen.com
cbush@hinckleyallen.com

22