UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:17-cv-22405-MORENO/LOUIS

ROLAND CORPORATION, a Japanese corporation,

    Plaintiff,

v.

INMUSIC BRANDS, INC., a Florida Corporation,

    Defendant.

**DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW ON DAMAGES**

Pursuant to Fed. R. Civ. P. 50(a), inMusic respectfully moves for judgment as a matter of law that Roland did not establish entitlement to any lost profits; did not establish the inexorable flow of profits and therefore cannot recover the lost profits of its subsidiaries; and did not present legally sufficient evidence of a reasonable royalty on either the drum or cymbal patents. Accordingly, Roland is not entitled to any damages.

## ARGUMENT

**A.** **Legal Standard**

A party is entitled to judgment as a matter of law if, after the non-movant has been fully heard, a reasonable jury would not have a legally sufficient evidentiary basis to find for the non-movant. *Collins v. Marriott Int'l, Inc.*, 749 F.3d 951, 957 (11th Cir. 2014). ). The Court must view the evidence and draw all fair inferences in the light most favorable to the non-movant. *Williams v. First Advantage LNS Screening Sols. Inc.*, 947 F.3d 735, 744 (11th Cir. 2020). To warrant submission to the jury, the non-movant must present more than a mere scintilla of evidence in support of its claims, and may not rely upon conjecture and speculation. *Mamani*

*v. Sanchez Bustamante*, 968 F.3d 1216, 1230 (11th Cir. 2020); *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 856 F. Supp. 1561, 1568 (S.D. Fla. 1994) ("[T]he factfinder must not be permitted to engage in surmise and conjecture, and the purpose of Rule 50 is to ensure that it does not.") (internal quotation marks and citation omitted).

The amount of a prevailing party's damages for patent infringement is a finding of fact on which the patent owner bears the burden of proof by a preponderance of the evidence. *SmithKline Diagnostics, Inc. v. Helena Laboratories Corp.,* 926 F.2d 1161, 1164 (Fed. Cir. 1991). Although the Patent Act provides for damages upon a finding of infringement no less than a reasonable royalty, "[t]he statute does not require an award of damages if none are proven that adequately tie a dollar amount to the infringing acts." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1291 (Fed. Cir. 2020).

**B.      Roland's Damages Expert Did Not Rely on Competent Evidence and Her Opinions Cannot Provide Legally Sufficient Evidence of Damages**

Roland presented insufficient evidence for a reasonable jury to determine the amount of its damages beyond a non-speculative level. Roland's damages expert, Suzanne Heinemann, relied extensively on information from former Roland employee Mr. Tamura. However, Mr. Tamura testified that he has no training as to patent damages, no training as to reasonable royalty damages, and is not competent to testify as to Roland's patent damages. Accordingly, Ms. Heinemann's opinions have no factual foundation and should be excluded or disregarded in their entirety.

Ms. Heinemann also testified **solely from memory** as to the amount of accused products inMusic sold and the other factual bases underlying both her lost profits and reasonable royalty opinions. Roland did not submit **any documents or empirical data** in support of Ms. Heinemann's opinions from which the jury could assess the bases of her testimony. "Such

unreliable testimony frustrates a primary goal of expert testimony in any case, which is meant to place experience from professional specialization at the jury's disposal, not muddle the jury's fact-finding with unreliability and speculation." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1373 (Fed. Cir. 2013).  Her lost profits calculation also relied on documents Roland provided her that were not prepared in the ordinary course of business—rather, Mr. Tamura confirmed those documents were prepared solely for the purposes of litigation.  "[W]hile an expert's data need not be admissible, the data cannot be derived from a manifestly unreliable source." *Power Integrations, Inc.*, 711 F.3d at 1373.  Moreover, although Fed. R. Evid. 703 permits an expert to base its opinions on facts or data that would not be admissible if an expert in his or her field would reasonably rely on those kinds of facts or data, "a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." *Wi-Lan Inc. v. Sharp Elec. Corp.*, 992 F.3d 1366, 1375 (Fed. Cir. 2021); *accord Carrizosa v. Chiquita Brands Int'l, Inc.*, 47 F.4th 1278, 1323 (11th Cir. 2022) (agreeing that an expert "may not…simply transmit…hearsay to the jury").

Thus, Ms. Heinemann's testimony regarding inMusic's sales and other factual data not otherwise admitted into evidence is insufficient to support a damages award.

### C.     Roland Failed to Establish Its Entitlement to Lost Profits

"[T]he availability of lost profits is a question of law for the court, not the jury." *Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1293 (Fed. Cir. 2007) ("[o]nly after the court has decided, as a matter of law, that lost profits are available does the jury then get to determine the amount of those lost profits.") (citations omitted).  To recover lost profits damages for patent infringement, a patentee must show that it would have received the additional profits "but for" the infringement.  *See Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v.*

3

*Mega Sys., LLC*, 350 F.3d 1327, 1346 (Fed. Cir. 2003) (vacating and remanding lost profits award) (quotation omitted). "An award of lost profits may not be speculative." *BIC Leisure Prods., Inc. v. Windsurfing Int'l*, 1 F.3d 1214, 1218 (Fed. Cir. 1993).

Roland has failed to put forth legally sufficient evidence to prove an entitlement to lost profits, and it is the province of the Court, not the jury, to make this determination. Roland sought lost profits on Alesis kits accused of infringing the mesh drum pad patents. Roland did not present legally sufficient evidence that it and only it could have made the sale of the accused kits absent infringement. "A patentee cannot obtain lost profits unless it and only it could have made the sale—there are no non-infringing alternatives or, put differently, the customer would not have purchased the product without the infringing feature." *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1289 (Fed. Cir. 2017).

inMusic identified at least two commercially acceptable non-infringing alternatives—silicone drums sold by Yamaha and rubber drums sold by inMusic, Kat, and others. During the period for which Roland seeks lost profits, Yamaha commanded market share with its non-mesh drums. *See* DTX-1408. "[M]arket sales of an acceptable noninfringing substitute often suffice alone to defeat a case for lost profits." *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1352 (Fed. Cir. 1999). Roland's **own witnesses** testified that Yamaha was a competitive threat to Roland during the period that Roland was selling mesh drums. Mr. Katsuda testified that Yamaha was a much bigger competitor to Roland than inMusic. 4-37:18-19. Mr. Tamura testified that competition from Yamaha was one of the reasons Roland was "in the red" and went private in 2014 – during the time period that Roland was selling mesh drums and Yamaha was not. 3:21:2-9. Mr. Tamura conceded on cross-examination during his damages testimony that Yamaha is an acceptable non-infringing alternative. DTX-1429 underscores this

4

point, as it demonstrates that in 2016 Roland identified Yamaha's silicone drum kits as its **only** competition.  *See* DTX-1429 at ROL 0011969.  Mr. Tamura further testified that consumers had options to purchase drum kits other than Roland's kits in 2014, and that Behringer competes with Roland in the sale of electronic percussion instruments.  In short, the trial record reflected that consumers found Yamaha, Alesis and Kat's non-mesh drums commercially acceptable, and no reasonable jury could find otherwise.

Roland also failed to show that consumers would not have purchased the accused products without the infringing feature.  Roland's own expert admitted that consumers consider more than one feature when deciding to purchase a drum.  Those internal documents created outside the context of this litigation are consistent with the testimony of David Gill that inMusic's sound modules drove demand for the accused products.

Thus, Roland failed to show that consumers were motivated to purchase the accused kits because of mesh, and Ms. Heinemann improperly limited the market to high-end mesh drum kits, artificially creating a two-player market.  *See Smithkline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1166 (Fed. Cir. 1995) (affirming unavailability of lost profits where patentee's evidence of a two-supplier market was pure conjecture and totally contrary to the commercial realities of the marketplace).  Therefore, inMusic is entitled to judgment as a matter of law that Roland cannot recover lost profits.  *See Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, (Fed. Cir. 2017) (reversing denial of judgment as a matter of law where there was not substantial evidence in the trial record upon which a jury could conclude that a non-infringing alternative was not accepted to consumers).

D. <u>**Roland Failed to Establish That It Can Recover the Lost Profits of Its Subsidiaries**</u>

Even if lost profits were available on this trial record, Roland cannot recover the lost profits of its subsidiaries. "[A] patentee may not claim, as its own damages, the lost profits of a

5

related company." *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365, 1375 (Fed. Cir. 2015), *vacated*. Poly-America L.P. v. GSC Lining Tech., Inc., 383 F.3d 1303, 1310-11 (Fed. Cir. 2004) ("Their parent has arranged their corporate identities and functions to suit its own goals and purposes, but it must take the benefits with the burdens. While we do not speculate concerning the benefits that the two companies reap from dividing their operations and separating the owner of the patent from the seller of the patented product, Poly-America and Poly-Flex may not enjoy the advantages of their separate corporate structure and, at the same time, avoid the consequential limitations of that structure—in this case, the inability of the patent holder to claim the lost profits of its non-exclusive licensee. While Poly-America may have the right to sue under its patents, both as an owner and as a back-licensee, it can recover only its own lost profits, not Poly-Flex's.")

As the foregoing demonstrates, the Federal Circuit has never expressly adopted the inexorable flow doctrine, allowing a parent to recover the lost profits of a subsidiary when the subsidiary's profits flow inexorably up to the parent. Even if it had, Roland has not made that showing. "Showing inexorable flow of profits from one entity to another is an extremely high bar to meet." *Polaris Indus., Inc. v. Arctic Cat Inc.*, 2019 WL 1118518, at *8 (D. Minn. Mar. 11, 2019). Ms. Heinemann expressly denied that she was offering an opinion as to whether Roland U.S.'s profits flow inexorably to Roland, and Magistrate Judge Louis denied inMusic's motion to preclude Ms. Heinemann's testimony on this point on the understanding that Roland would adduce evidence sufficient to establish inexorable flow through sources other than Ms. Heinemann. Specifically, in order to survive a *Daubert* challenge to Ms. Heinemann's opinions, Roland relied on a declaration from Mr. Tamura to establish the interrelatedness between Roland Corporation and its subsidiaries. Magistrate Judge Louis agreed that it was "dubious" whether

the facts in Mr. Tamura's declaration were sufficient to satisfy the inexorable flow doctrine. However, at trial, **Mr. Tamura testified that he could not speak to Roland's lost profits.**

On the rare occasion inexorable flow has been found, the parent and subsidiary have, for example, shared a bank account; all revenue received by the subsidiary remained under the parent's control; and all costs related to the sale of goods were borne by the parent. *See Polaris Indus., Inc. v. Arctic Cat Inc.*, 2019 WL 1118518, at *8 (D. Minn. Mar. 11, 2019) (("Further, a patentee with a non-exclusive licensing arrangement with its formerly wholly-owned subsidiary is insufficient.") (quoting *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1367 (Fed. Cir. 2008)). The Federal Circuit has held that a 100%-owned subsidiary relationship and consolidated financial statements are insufficient to establish that profits flow inexorably to the parent. *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1367 (Fed. Cir. 2008). Roland did not adduce any of the facts that would be sufficient to establish inexorable flow and, again, relied solely on Mr. Tamura who could not speak to Roland's lost profits. Accordingly, Roland cannot recover consolidated lost profits, even if inexorable flow were a viable theory of recovery.

### E.     Roland Failed to Establish That It Can Recover the Lost Profits of Its Subsidiaries

Roland also bears the burden of establishing a reasonable royalty beyond a speculative level. *See Lucent Techs. Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009) ("[O]n . . . JMOL motions, district court judges must scrutinize the evidence carefully to ensure that the 'substantial evidence' standard is satisfied, while keeping in mind that a reasonable royalty analysis necessarily involves an element of approximation and uncertainty.") (internal quotation marks and citation omitted). Although the Patent Act provides for damages upon a finding of infringement no less than a reasonable royalty, "[t]he statute does not require an award of damages if none are proven that adequately tie a dollar amount to the infringing acts." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1291 (Fed. Cir. 2020).

"The patentee must in every case give evidence tending to separate or apportion . . . the patentee's damages between the patented feature and the unpatented features . . . ." *Omega Patents*, 13 F.4th 1361, 1376 (Fed. Cir. 2021) (internal quotation marks and citation omitted). Apportionment is required even when the product to be used as the royalty base contains the same components as those set forth in the asserted claims, unless the patentee shows that the patented improvement drove demand for the entire accused product. *See Omega Patents*, 13 F.4th at 1376-77. Ms. Heinemann's reasonable royalty opinions as to both the drum and cymbals patents were based on purportedly comparable licenses. "[W]hen a sufficiently comparable license is used as the basis for determining the appropriate royalty, further apportionment may not necessarily be required." *Omega Patents*, 13 F.4th at 1376-77 (internal quotation marks and citation omitted). "The patentee has the burden of proving damages, and where licenses are at issue, that includes the burden to prove that the licenses were sufficiently comparable." *Omega Patents, LLC v. Calamp Corp.*, 13 F.4th at 1377.

As previously discussed, Roland did not show that the patent improvements drove demand for the entire accused products. Accordingly, Ms. Heinemann was required to apportion for the unpatented features of the accused products unless Roland showed that licenses upon which she relied were sufficiently comparable to reflect built-in apportionment. *See Omega Patents*, 13 F.4th at 1377. With respect to the drum pad patents, Ms. Heinemann relied on three allegedly comparable agreements between Roland and Guitar Center, Pintech, and Hart. However, all three of those licenses included patents that are not at issue in this case. [*nb: Hart includes '538, Pintech includes '538, '857, GC includes '538, '857, '135*]

"[A]llegedly comparable licenses may cover more patents than are at issue in the action…" *Omega Patents*, 13 F.4th at 1380 (internal quotation marks omitted). But the patentee is

"nonetheless required to account for such distinguishing facts when invoking [the licenses] to value the patented invention." *Id.* Ms. Heinemann made no effort whatsoever to **account for** the differences in patent claims licensed by the benchmark agreements and those at issue in this case, or other distinguishing facts including the length of time between the benchmark agreements' execution and the hypothetical negotiation date, the form of royalty, and releases for past infringement. **Identifying** such differences is not sufficient to **account for** those differences. *See Omega Patents*, 13 F.4th at 1381.

In addition, to support a purported 2:3 ratio for converting the single mesh benchmarks on which she relied to double mesh, Ms. Heinemann relied solely on a proposed but unaccepted offer from Roland to Guitar Center. The evidentiary value of proposed licenses "is limited … by the fact that patentees could artificially inflate the royalty rate by making outrageous offers." *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 30 (Fed. Cir. 2012).

Similarly, as to the cymbal patents, Ms. Heinemann relied on seven allegedly comparable agreements. Two of those agreements had no go-forward royalty at all. The remaining agreements were entered into between 2.5 to 8.5 years after the hypothetical negotiation date, included releases or lump sum payments for past infringement, and were primarily executed after Roland initiated or threatened litigation. Again, Ms. Heinemann failed to **account for** – rather than, at best, **acknowledge** – those material differences. *See Wordtech Sys., Inc. v. Integrated Network Sols., Inc.*, 609 F.3d 1308, 1320-21 (Fed. Cir. 2010) (noting that with respect to licenses involving the patents-in-suit, "litigation itself can skew the results of the hypothetical negotiation") (internal quotation marks omitted); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 78 (Fed. Cir. 2012) (finding that a settlement agreement entered into three years

after the hypothetical negotiation date had little probative value to the hypothetical negotiation analysis).

Critically, **Mr. Tamura testified that he did not know if Roland entered into any licenses that establish a reasonable royalty for the patents-in-suit**. He also denied that the Guitar Center license on which Ms. Heinemann relied was a comparable license for the accused products.

Thus, Roland failed to present to the jury "a basis in fact to associate the royalty rates used in prior licenses to the particular hypothetical negotiation at issue in the case." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011). Accordingly, inMusic is entitled to judgment as a matter of law that Roland failed to establish reasonable royalty damages. *See Lucent Techs. Inc. v. Gateway, Inc.*, 580 F.3d at 1340 (reversing the district court's denial of judgment as a matter of law regarding damages); *TecSec, Inc.*, 978 F.3d at 1291 (affirming the district court's reduction of the jury's damages award to zero and rejecting that an award of damages greater than zero is required in all cases where the jury finds infringement).

Dated:  November 18, 2022                Respectfully Submitted,

INMUSIC BRANDS, INC.

By Its Attorneys,

**SHUTTS & BOWEN, LLP**

*/s/ Jodi-Ann Tillman*
JOSEPH W. BAIN
JBain@shutts.com
525 Okeechobee Boulevard, Suite 1100
West Palm Beach, FL 33401
Tel:  (561) 650-8500 / Fax:  (561) 650-8530

JODI-ANN TILLMAN
JTillman@shutts.com
200 East Broward Blvd., Ste. 2100
Fort Lauderdale, FL 33301
Tel:  (561) 671-5822 / Fax:  (561) 650-8530

**HINCKLEY, ALLEN & SNYDER LLP**
CRAIG M. SCOTT (*pro hac vice*)
cscott@hinckleyallen.com
CHRISTINE K. BUSH (*pro hac vice*)
cbush@hinckleyallen.com
ADAM M. RAMOS (*pro hac vice*)
aramos@hinckleyallen.com
REBECCA F. Briggs (*pro hac vice*)
rbriggs@hinckleyallen.com
100 Westminster Street, Suite 1500
Providence, RI 02903
Tel: (401) 274-2000 / Fax (401) 277-9600

LAUREL M. GILBERT (*pro hac vice*)
lgilbert@hinckleyallen.com
MARK D. HOCHBERG (*pro hac vice)*
mhochberg@hinckleyallen.com
28 State Street
Boston, MA 02109
Tel: (617) 345-9000 / Fax: (617) 345-9020

63185300 v1

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2022, I caused the foregoing to be electronically filed through the ECF system by which the registered participants identified on the Notice of Electronic Filing should receive notice, including the following counsel of record:

Laura Ganoza, Florida Bar No. 118532
**FOLEY & LARDNER LLP**
One Biscayne Tower, Suite 1900
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 482-8400
Facsimile: (305) 482-8600
lganoza@foley.com

Justin B. Uhlemann, Florida Bar No. 568872
**FOLEY & LARDNER LLP**
One Independent Drive, Suite 1300
Jacksonville, Florida 32225
Telephone: (904) 359-2000
Facsimile: (904) 359-8700
juhlemann@foley.com

Victor de Gyarfas, *pro hac vice*
Tiffany Kim Sung, *pro hac vice*
**FOLEY & LARDNER LLP**
555 South Flower Street, Suite 3300
Los Angeles, California 90071
Telephone: (213) 972-4500
Facsimile: (213) 486-0065
vdegyarfas@foley.com
tsung@foley.com

Kimberly Kristin Dodd, *pro hac vice*
**FOLEY & LARDNER LLP**
777 East Wisconsin Avenue
Milwaukee, WI
Telephone: (414) 319-7345
kdodd@foley.com

*Attorneys for Roland Corporation*