# EXHIBIT D

EXHIBIT D

```
 1              ** ROUGH DRAFT ** ROUGH DRAFT ** ROUGH DRAFT **

 2                       UNITED STATES DISTRICT COURT
                         SOUTHERN DISTRICT OF FLORIDA
 3                             MIAMI DIVISION

 4               CASE NUMBER 17-22405-CV-MORENO/LOUIS

 5   ROLAND CORPORATION,

 6              Plaintiff,                      Courtroom 12-2

 7      vs.                                     Miami, Florida

 8   INMUSIC BRANDS, INC.,                      November 15, 2022

 9              Defendant.
     _____
10
                    ROUGH DRAFT OF JURY TRIAL PROCEEDINGS
11                 BEFORE THE HONORABLE FEDERICO A. MORENO
                     SENIOR UNITED STATES DISTRICT JUDGE
12   _____

13   APPEARANCES:
     FOR THE PLAINTIFF:        VICTOR S. DE GYARFAS, ESQ.
14                             TIFFANY KIM SUNG, ESQ.
                               JUSTIN B. UHLEMANN, ESQ.
15                             LAURA GANOZA, ESQ.
                               KIMBERLY K. DODD, ESQ.
16
     FOR THE DEFENDANT:        CRAIG M. SCOTT, ESQ.
17                             CHRISTINE K. BUSH, ESQ.
                               REBECCA F. BRIGGS, ESQ.
18                             MARK D. HOCHBERG, ESQ.

19                             JOSEPH BAIN, ESQ.
                               JODI-ANN R. TILLMAN, ESQ.
20

21

22

23
     REPORTED STENOGRAPHICALLY
24   BY:                       GILDA PASTOR-HERNANDEZ, RPR, FPR, FPR-C
                               gphofficialreporter@gmail.com
25                             305-523-5118
```

Draft Copy

1        Can you blow up Claim 1?  Why don't you blow up Claim 2
2  because I'm going to ask about that one next.
3        1 and 2.  Scroll down a little bit.  There you go.
4        All right.  So that's Claim 1.  So am I correct I did
5  not hear you give a noninfringement opinion about Claim 1?
6  A.  That's correct.
7  Q.  And am I correct that I did not hear you give a
8  noninfringement opinion about Claim 2?
9  A.  That's right.
10 Q.  And then Claim 4.  Am I correct that I did not hear you give
11 a noninfringement opinion about Claim 4?
12 A.  That's correct.
13 Q.  All right.  Let's turn to the same exercise with the 535
14 Patent which is Plaintiff's Exhibit 3.  Claim 19.
15        Am I correct that I did not hear you give a
16 noninfringement opinion about Claim 19?
17 A.  Yes, Claim 19 and the previous ones, actually, my opinions
18 of these was that they are not valid and I did not -- so let me
19 just check.  That's right, I did not have a noninfringement
20 opinion on this.
21 Q.  And then what about Claims 20 and 21?  Is that correct that
22 you did not give a noninfringement opinion about Claims 20 and
23 21?
24 A.  Yes, these were in my invalidity opinions.
25 Q.  Okay.  Let's talk about your opinions about noninfringement

Draft Copy

1  Court construed A to mean one.
2  BY MS. DODD:
3  Q.  I didn't ask you about the Court's claim construction,
4  though, did I?  I asked you about normal patent law.
5  A.  I don't know.  That's a legal question.
6  Q.  Okay.  So you are saying that the Court construed sensor to
7  require a transducer cushioning member?
8  A.  Yes.
9  Q.  But that's not in the Court's construction?
10 A.  Hang on a minute.  Sorry.  The Court did not require that.
11 The patent requires that.
12 Q.  Okay.  This is what the Court requires?
13 A.  The Court required -- clarified the meaning of sensor to be
14 a head sensor and you just have to read the patent to understand
15 what that is.
16 Q.  And if the Court wanted to put that in, the Court could have
17 put that in the definition right here?
18 A.  I don't think that was necessary for the Court to do that
19 because the Court provided all the clarity that was needed, as I
20 will be happy to explain.
21 Q.  And it says head sensor, right?  The Roland slide says head
22 sensor?
23         MR. SCOTT:  Let the witness answer the question,
24 please.
25         THE COURT:  Let him answer.

1              Go ahead.
2              THE WITNESS:  The Court's construction is that a sensor
3  is the head sensor.
4  BY MS. DODD:
5  Q.  Okay.  One of the patents that you relied on for invalidity
6  for this term was the Karch Patent.  That is Plaintiff's Exhibit
7  65?
8  A.  Yes, the Karch Patent was the electronic conversion kit.
9  Q.  All right.  Let's take a look at figure 1 of Karch.
10             Or figure 2.  Blow up figure 2, please.
11             Karch has two transducers, right?
12 A.  It has -- yes, it has two transducers, 20 and 24.  Piezos.
13 Q.  Can you highlight them with your finger like you did the
14 other stuff yesterday?
15 A.  What color would you like?
16 Q.  Any color.
17 A.  There's one and here is the other one.
18 Q.  So Karch has two transducers, right?
19 A.  It has two piezos, two transducers, yes.
20 Q.  So for noninfringement, you're arguing that two sensors does
21 not infringe, but for invalidity you're pointing to Karch and
22 Karch has two sensors, right?
23 A.  That's a misrepresentation of what I'm arguing.  A sensor is
24 a head sensor and I'm talking about head sensors in the context
25 of sensors, not transducers.

1  Q.  Does Karch disclose a head sensor?
2  A.  It does not.
3  Q.  So how could there be invalidity based on Karch if it
4  doesn't disclose a head sensor?
5  A.  I'm not sure I understand your question.
6  Q.  You just said Karch doesn't have a head sensor.
7  A.  That's correct.  And I've never had the view that Karch
8  doesn't have a head sensor -- sorry, that Karch has a head
9  sensor.
10 Q.  So then how can Karch possibly invalidate the claims if it
11 doesn't have a head sensor?
12 A.  So the combination of Karch -- I'm happy to go through my
13 prior descriptions -- is the combination of an electronic --
14 it's a conversion kit with a mesh head.  And so that is the
15 context in which the combination of Karch was utilized.
16 Q.  What did you combine it with?
17 A.  With Ishida or Hayashi, for example.
18 Q.  Ishida doesn't have a head sensor, does it?
19 A.  Ishida has a mesh, and a mesh -- there are mesh claims both
20 for a description that is not specific to an electronic
21 instrument.  So I talked about that.  And then in the context of
22 electronic instruments where in combination with Karch or
23 Klynas, which is another electronic instrument that was well
24 known, that's how I argued these.
25 Q.  Okay.  So Karch does not disclose a head sensor?

1  A.  That's right.
2  Q.  And Karch doesn't disclose any cushioning members with an
3  upward taper either, does it?
4  A.  No, it does not.
5  Q.  All right.  Let's look at Klynas then, since you are relying
6  on that.  That's Plaintiff's Exhibit 65.
7          Sorry.  79, I'm sorry.
8          Why don't we jump to the next figure.  Next one.
9          All right.  Let's blow up figure 3.
10         So this is Klynas, what you are relying on?
11 A.  Yes.
12 Q.  And Klynas has a head sensor?
13 A.  Klynas is a transducer.  I pointed it out to you before.
14 That's 60.
15 Q.  Does it have a head sensor?
16 A.  It has a transducer.  It's got this essentially compliant
17 material 70 that sits on top of a transducer, but it's not
18 upwardly tapered.  So by the definition of head sensor, this is
19 different.
20 Q.  Okay.  So basically for noninfringement, you're saying
21 there's got to be only one sensor, it has to have a cushioning
22 member, and it has to have an upward taper, but for invalidity
23 you are saying none of these have a head sensor, none of these
24 have a cushioning member and none of them have an upward taper?
25 A.  What I'm saying -- I'm saying that this is not a head sensor

1  in accordance with the Court's construction and I'm saying that
2  one of ordinary skill in the art would have known to combine
3  let's say the invention that, you know, ultimately is presented
4  in the patents in suit.
5  Q.  But none of the prior art you showed us has a cushioning
6  member or that has an upward taper, right?
7  A.  That's correct.
8  Q.  So basically for infringement you are kind of taking one
9  position and invalidity you are taking another position?
10 A.  No, I'm not.  I think I've been fairly consistent in
11 everything that I've said.
12 Q.  Well, you haven't shown us any prior art that shows a
13 cushioning member with an upward taper?
14 A.  I think I understand the dilemma here.  I mean, you believe
15 that I am saying that the head sensor is in the prior art as
16 defined and presumed by the Court.  I have not said that once.
17 I am not saying that.  And so I think you are putting words into
18 my mouth.  I'm saying that's not what I'm saying and that's
19 where we are.
20 Q.  So you told the jury yesterday that all this prior art
21 renders the claims invalid, but none of it shows a cushioning
22 member with an upward taper.  You never even mentioned anything
23 about that in your direct exam for invalidity, right?
24 A.  I'm not --
25 Q.  All right.  While we're on this one --

Draft Copy

1   the car is going to function.
2          If the parts are put together and if the drum is
3   assembled the way it is supposed to be assembled it's not
4   generally hollow because it has all the posts and the foam and
5   the Piezos that make David Gill's and inMusic's design not
6   Roland's.
7          When you get to the jury Verdict Form for the drum
8   patents we are asking you, respectfully, to find noninfringement
9   for the drums, and when you do, remember who bears the burden.
10  Who bears the burden?  Roland.  Roland bears the burden on
11  infringement and they have not met that burden.  And you know
12  that because you can ask yourself what exactly did Dr. Lehrman
13  actually technically analyze?  What did he take apart?
14         If you have any question about the analysis, I would
15  ask you to look at Defendant's Exhibits 1352 and 1353, because
16  those are Dr. Kytomaa's noninfringement analysis, and he did do
17  an analysis, and he did take them apart, and those will be back
18  in the back room with you if you have any questions about where
19  Dr. Kytomaa landed on that issue.
20         So I am going to go quickly to the displacement patent.
21  This is the displacement patent with the spring in it.  You
22  heard some testimony from Dr. Kytomaa earlier today about this
23  displacement patent and a Japanese application, which has been
24  marked as Defendant's Exhibit 1442.
25         Mark, if you could please cull up Takami and Wu, which