UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 1:17-cv-22405-MORENO/LOUIS

ROLAND CORPORATION, a Japanese Corporation,

    Plaintiff,

        v.

INMUSIC BRANDS, INC., a Florida Corporation,

    Defendant.

**RESPONSE TO DEFENDANT'S "THIRD MOTION TO STRIKE MATERIALS OUTSIDE THE TRIAL RECORD AND RQEUEST FOR SANCTIONS"**

## I. INTRODUCTION

Defendant inMusic's Third Motion to Strike Materials Outside the Trial Record is meritless. Plaintiff Roland Corporation ("Roland") proceeded on the sur-reply filing as it was explicitly authorized by the Court at the January 23, 2023 evidentiary hearing. Pursuant to the Court's instructions, Roland filed a sur-reply brief with the evidence it wanted before the Court relating to equitable estoppel issues. Roland put in two declarations in its sur-reply from witnesses who were present and prepared to testify at the evidentiary hearing on equitable estoppel that the Court itself set.

One declaration is from Mr. Rittmaster. Mr. Rittmaster testified at trial before Mr. Gill told his story, but additional testimony from Mr. Rittmaster is probative to contradict the surprise testimony of Mr. Gill concerning an alleged call. Mr. Rittmaster provides evidence that there was no call between himself and three inMusic engineers, who allegedly attended the call even though they were not represented by counsel on the alleged call. Of course, Mr. Rittmaster would never take such a call without an inMusic lawyer on the call, and inMusic, contrary to its explicit, but false, representations to the Court, has never provided any corroboration of the alleged call. Mr. Rittmaster's declaration identifies his searches for evidence that would have had to exist if the alleged call actually occurred. As Mr. Rittmaster details, no such call occurred and there is no corroborating evidence.

The second declaration is from Suzanne Heinemann, Roland's damages expert. Given the very limited amount of time at trial allotted for her testimony (20 minutes), and the jury's previous verdict that all of the asserted drum and cymbal claims were already valid and infringed, her damages testimony did not take time to specify separately the amount of reasonable royalty damages due to drum sales as opposed to cymbal sales. inMusic now asserts that if equitable estoppel is found, then **all** reasonable royalty damages are "gutted." It would be improper, and reversible, if the Court were to eliminate reasonable royalty damages for drums. Accordingly, Ms. Heinemann's declaration explains that $1,048,000 of the $1.9 million reasonable royalty award is attributable to cymbal sales and the rest to drum sales. That testimony is highly probative and the Court should allow both declarations.

## II. FACTUAL BACKGROUND

### A. The Court Explicitly Limited Witnesses To Being Called Once At Trial

During Calendar Call on October 28, 2022, the Court made clear that it only wanted to hear from witnesses one time:

> 16  MS. BUSH: I know. I have one clarification question.
> 17  We have the invalidity case, too. I assume you want the witness
> 18  to be called once.
> 19  THE COURT: Oh, I said that before, that's a given on
> 20  everything. Separate, but equal, we talk about both,
> 21  infringement and invalidity.

10/25/2022 Tr. at 72:16-21, Ex. 1.

### B. At Trial, Mr. Rittmaster Denied That The Alleged Call With Mr. Gill Took Place, And Contrary To Defendant's Representations To The Court, There Has Never Been Any Corroboration Of Mr. Gill's Story

Contrary to Mr. Gill's uncorroborated story, at trial Mr. Rittmaster denied that he ever stated that Roland acquiesced to inMusic's infringement of Roland's cymbal patents or would not enforce cymbal patents against inMusic:

> 16  Q. Now, did you ever express to inMusic in writing that Roland
> 17  was not going to enforce its patent rights against them?
> 18  A. No, actually the opposite. We continued to tell them that
> 19  we disagreed with their arguments and we felt that they should
> 20  stop.
> 21  Q. What about orally, did you ever on a phone call say to
> 22  inMusic, no, that's okay, we are not going to enforce our
> 23  patents?
> 24  A. No, never did.

11/3/2022 Rough Tr. 83:16-24, Ex. 2.

At the evidentiary hearing, Roland explained that Mr. Gill's alleged call with Mr. Rittmaster was an "after-the-fact fabrication" and there was no corroborating evidence for the call. 1/23/2023 Rough Tr. at 29:16-18, Ex. 5. In response, inMusic made the remarkable assertion that there was "corroborative evidence" of Mr. Gill's call and that the corroborating evidence would be summarized in the 1/24/2023 brief inMusic would file:

> 4  THE COURT: Your opponent says don't believe him.
> 5  That's what he says, right? No, isn't that what you say?
> 6  MR. SCOTT: Not only don't believe him, Judge, but also
> 7  we do have exhibits in the record that corroborates Mr. Gill's
> 8  testimony. That's all the subject of the briefing and we are
> 9  going to summarize that for you tomorrow, but there is
> 10 corroborative evidence.

1/23/2023 Tr. 30:6-10, Ex. 5.

That representation to the Court, just as the entire basis of inMusic's equitable estoppel theory, is false. The briefing inMusic filed the next day provided absolutely no corroborating evidence of the call. Instead of "corroborating" evidence, all that inMusic could cite to was Mr. Gill's own false testimony on November 8 and 10, 2022:

> Mr. Gill sent images of the redesign before the call, during the call explained the redesign to solicit Mr. Rittmaster's feedback and opinion, and left the call with the "opinion that we were going to be left alone." Nov. 8, 2022 Trial Tr. at 107:9-108:9; Nov. 10, 2022 Trial Tr. at 7:4-12.

ECF No. 669 at 3. Contary to inMusic's counsel's representation regarding "corroborative evidence," there is no corroboration for Mr. Gill's false testimony (11/8/2022 Rough Tr. 107:9-108:9, Ex. 6), and there never has been. The alleged call between three inMusic engineers, who were unrepresented by counsel, and an attorney for Roland, would never have occurred, and did not occur. On cross examination, Mr. Gill himself could point to no corroborating evidence that was ever produced in litigation or any letter corroborating the call after the call occurred:

```
 4  Q.  A couple of days ago you provided testimony about receiving
 5  a letter from inMusic's lawyer that was sent by Mr. Rittmaster
 6  in September of 2011 and you discussed a telephone call with
 7  Mr. Rittmaster.  Do you remember that testimony?
 8  A.  Yes, I do.
 9  Q.  All right.  And after that phone call, did you ever send
10  Mr. Rittmaster any images identifying what inMusic was doing
11  with its new design?
12  A.  I believe they were sent prior to the phone call.
13  Q.  Were those images produced in this litigation?
14  A.  I don't know that.
15  Q.  Did you ever send a letter after the call documenting what
16  had happened?
17  A.  I don't believe so.
```

11/10/22 Rough Tr. 7:4-17, Ex. 3. No corroboration for the call exists, contrary to inMusic's counsel's representation to the Court.

### C. In Connection With Damages, The Court Limited The Parties To Twenty Minutes Of Damages Expert Testimony Each

In connection with damages expert testimony, the Court indicated it would only allow 20 minutes of damages expert testimony:

```
 6        And in view of that and in view of the length of
 7   deliberations and the fact that I've already decided we have to
 8   get rid of two jurors and I think your foreperson is the one who
 9   also needed to leave for Thanksgiving, it's just going to be
10   tight.  And now with this advanced warning, the experts will be
11   able to testify for 20 minutes each.  The cross-examination will
12   be no longer than 15 minutes which is a lot.  And then you have
13   redirect for five minutes.  So I'm giving you all of that
14   warning now so you can talk with your experts.  The only thing
15   you don't know is which claims they will find, if they do find
16   liability on any claim, and then you've got to reduce that so
17   that will be quick.  And then you have 10 minutes closing
18   argument on damages.  You know, is it a long time?  You know,
```

11/17/2022 Tr. 19:10-12, Ex. 4.[1]

### D. The Court Set The Evidentiary Hearing To Occur After Roland's Briefing On Equitable Issues

After the jury trial in this case concluded, and on the same day that the Court issued a first Final Judgment (ECF No. 605), on November 21, 2022, the Court also issued a Scheduling Order (ECF No. 602) setting a briefing schedule "pertaining to all remaining equitable issues," with the following briefing schedule:

1. Defendant shall file its initial brief by **December 14, 2022**.

2. Plaintiff shall file its response brief by **January 17, 2023**.

3. Defendant shall file its reply brief by **January 24, 2023**.

---

[1] Ignoring the Court's directive, inMusic took far longer than 15 minutes on cross-examination.

Before Roland's brief on equitable issues was due, however, on December 30, 2022 (ECF No. 639), the Court ordered that it would "hold an evidentiary hearing on the remaining equitable estoppel issue on Monday, January 23, 2023, at 9:00 a.m." Each side was given "two hours to present witnesses on direct examination and 50% of the time used on direct will be allowed for cross examination." *Id.*

Given the timing of the evidentiary hearing, six days after Roland's response brief was due and the day before inMusic's reply brief was due, as well as the specific language in the Order regarding time allowed for examination of witnesses, Roland logically presumed that the Court would hear evidence related to equitable estoppel and allow cross-examination. Roland prepared accordingly and brought its witnesses, Ted Rittmaster and Suzanne Heinemann, from California to Miami. inMusic did not file an objection to the evidentiary hearing Order until just four days before the hearing, on January 19, 2023 (ECF No. 665). inMusic provided no explanation for its delay in objecting to the hearing. inMusic did not bring a single witness to the evidentiary hearing.

## III. THE COURT SHOULD NOT EXCLUDE ROLAND'S EVIDENCE ON SURREPLY THAT WAS MEANT TO PROVIDE THE EVIDENCE THE COURT EXPLICITLY ALLOWED IN ITS EVIDENTIARY HEARING ORDER

### A. The Court Explicitly Allowed Roland To Include Evidence In A Sur-reply

While the Court did not end up actually hearing evidence from the witnesses Roland brought across the country to the January 23, 2023, evidentiary hearing, the Court explicitly allowed Roland to file a sur-reply brief, stating: "So what I'm going to do is allow the plaintiff to respond or reply to whatever the party, inMusic, that has the burden of proof, you respond **however you want**" (1/23/2023 Tr. at 31:3-5, Ex. 5, emphasis added). The Court, of course, has discretion to allow additional evidence, as demonstrated by its December 30, 2022 Order setting an evidentiary hearing in which witnesses would be allowed to testify. inMusic has provided no authority to the contrary.[2] Accordingly, Roland properly, and in accordance with the Court's own directive, put in the evidence it wanted on sur-reply.

---

[2] inMusic's cited cases at ECF No. 683 p. 2, are all irrelevant. That authority addresses a Rule 59 motion, *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020), a motion to reconsider *Powrzanas v. Jones Util. & Contr. Co., Inc.*, 834 Fed. Appx. 500, 510 n.9 (11th Cir. 2020), and evidence on remand, *Cambridge University Press v. Albert*, 906 F.3d 1290, 1302 (11th Cir. 2018). None of those cases address the situation here, where the Court, in its discretion allows evidence on an equitable issue before a judgment has been entered.

### B. Mr. Rittmaster's Testimony Is Highly Probative And Should Be Allowed

Roland's evidence on sur-reply is highly probative and should be allowed. Roland was under the impression that witnesses would only be allowed to testify once, given the Court's unequivocal statement at the Calendar Call on October 25, 2022. On Mr. Rittmaster's direct testimony at trial, he unequivocally stated that he never told inMusic, in writing, or orally, that Roland would not enforce its cymbal patents against inMusic. 11/3/2022 Tr. at 83:16:24, Ex. 2. Mr. Gill's fabricated trial testimony about a call between three inMusic engineers, who were unrepresented by counsel, and Mr. Rittmaster came as a complete surprise to Roland. Roland cross-examined Mr. Gill, and Mr. Gill could not point to any corroborating evidence for the call, either before or after the call. 11/10/22 Rough Tr. 7:4-17, Ex. 3. Mr. Gill never explained at trial how this alleged call with Mr. Rittmaster was set up, how Mr. Gill got Mr. Rittmaster's phone number, or why an inMusic lawyer was not on the call with Roland's counsel. Mr. Gill provided no corroborating evidence of the call. Mr. Gill could not even identify a specific date on which the momentous call allegedly occurred!

Remarkably, also, Mr. Gill never gave a word of testimony about **what Mr. Rittmaster allegedly said**. Instead, Mr. Gill only testified as to his own personal subjective opinion after the fabricated call that it was his "opinion that we were going to be left alone." 11/18/2022 Rough Tr. at 107:9-108:9. Mr. Gill never explained why he had that opinion or anything specific that Mr. Rittmaster said to give him that opinion. Mr. Gill's subjective feeling is not evidence of any statement by Roland.

Mr. Gill's story is obviously false, but because the Court only allowed Mr. Rittmaster to be called once at trial, Roland did not have the chance to put Mr. Rittmaster back on the stand to provide rebuttal testimony concerning Mr. Gill's false testimony (which Mr. Gill provided only after Mr. Rittmaster had already testified). Especially given the misrepresentation by inMusic's counsel at the evidentiary hearing that inMusic would provide "corroborative evidence" of the alleged call, which "corroborative evidence" never was provided, Mr. Rittmaster's testimony submitted on sur-reply is especially probative of the fact that the alleged call never occurred and there is absolutely no credible evidence it ever occurred. The alleged images of the cymbal redesign that Mr. Gill allegedly sent to Mr. Rittmaster do not exist and inMusic has never identified

any such images. Mr. Rittmaster's declaration on sur-reply details his efforts to search for any evidence that would corroborate whether such a communication with Mr. Gill ever occurred, and there is no such evidence.

Instead of explaining inMusic's inability to identify what would have been the most probative evidence regarding its equitable estoppel claim, i.e., some sort of corroboration of the fabricated call, inMusic tries to distract and makes an irrelevant argument about some of Mr. Rittmaster's emails that were destroyed. There is no valid dispute that some of Mr. Rittmaster's emails were destroyed in 2018,[3] but that has nothing to do with the issues regarding equitable estoppel. Had any email between Mr. Gill and Mr. Rittmaster existed, inMusic was obligated to have produced it in discovery, and certainly would have, if it existed. But no such email exists and inMusic never produced any such email or any communication of any kind regarding the fabricated call between Mr. Gill's team of engineers and Mr. Rittmaster. The only "evidence" inMusic has for its equitable estoppel argument is the false testimony of Mr. Gill. The jury plainly disbelieved all of Mr. Gill's testimony at trial, when it ruled against inMusic on infringement and invalidity, and this Court should as well.

### C. Ms. Heinemann's Testimony Is Highly Probative And Should Be Allowed

As noted above, the Court only allotted Roland's damages expert 20 minutes of testimony. 11/17/2022 Rough Tr. 19:10-11, Ex. 4. In the interests of the very limited amount of time given to put on a $4.6 Million damages case, and given that the jury had already returned a verdict finding all asserted claims infringed and not invalid for both the drum and cymbal patents, Roland's damages expert did not spend the time to go through the analysis at trial of the reasonable royalty applicable to infringing cymbal sales separate from the reasonable royalty applicable to infringing drum sales. Now, however, inMusic makes the incorrect argument if the equitable estoppel defense is successful, it "guts the cymbal verdict and **all royalty damages**." (ECF No. 683 at 2, emphasis added.) There is no basis for "gutting" any drum related royalty damages, as the equitable

---

[3] The cyber-attack against Foley was well documented in the press. *See, e.g.*, https://news.bloomberglaw.com/privacy-and-data-security/foley-lardner-hit-with-cybersecurity-incident-1
and
https://www.yahoo.com/now/foley-lardner-suffers-cyber-event-073818684.html

estoppel argument in this case has nothing to do with drums. inMusic limited the equitable estoppel defense to only the cymbal damages.[4]

The Heinemann testimony identifies the applicable amount of royalties attributable to inMusic's infringing cymbal sales, i.e., $1,048,000 of the total $1.9 Million in reasonable royalty damages the jury awarded for drums plus cymbals. The jury did not need to know the break out of cymbal versus drum damages because they found both the Drum and Cymbal Patents to be infringed and awarded damages for both. While Roland believes that there is no factual or legal basis for a finding of equitable estoppel in this case, in the event the Court does find equitable estoppel applies to inMusic's infringing cymbal sales, the Court should modify the judgment appropriately, and not indiscriminately eliminate **all royalty damages**, which would necessitate an appeal on the issue of an improper modification of the judgment.

## IV. NO SANCTIONS AGAINST ROLAND ARE WARRANTED

inMusic has not cited any authority for its improper request for sanctions. inMusic sent an email the morning it filed its motion demanding to meet and confer within a few hours on the same day it filed its motion. Roland immediately acknowledged inMusic's request to meet and confer and explained that a call that same day was not possible given competing and previously scheduled obligations, but provided several times the very next day for a call. inMusic refused to engage in a meet and confer conference when Roland's counsel was available. Instead, in its typical fashion, inMusic made no good faith effort to meet and confer as required under the Local Rules. Roland proceeded on the sur-reply as it believed was explicitly authorized the Court and there is no basis for sanctions against Roland. inMusic is the only party worthy of being sanctioned on this motion for unnecessarily duplicating the proceedings and failing to meet and confer.

Further, although Roland brought witnesses to the evidentiary hearing and was ready for them to be cross-examined, inMusic failed to bring even a single witness to the evidentiary hearing, and was plainly frightened by the thought of providing more testimony. inMusic knew that any witness who testified about the equitable estoppel issues would be shown to have no credibility. inMusic had a witness, Mr. Gill, tell an unbelievable story about three engineers calling opposing

---

[4] inMusic's Fourth Defense sought to bar claims under all the patents in suit under a variety of nonsensical theories never pursued by inMusic, including "laches" and "unclean hands." *See* ECF No. 156, Fourth Affirmative Defense. inMusic's Equitable Estoppel Motion, however, is limited to the Cymbal Patents and equitable estoppel. *See* ECF No. 624.

counsel with no inMusic attorney on the call, and for which call there is absolutely no corroborating evidence – not a single email from Mr. Gill to anyone at inMusic discussing his team of engineers' triumph of persuasion, and not even a single image of the allegedly redesigned cymbals.  Then inMusic moved to strike the evidence which responds to inMusic's surprise story about the phone call that never happened. inMusic's aggressive tactics demonstrate its desperation. inMusic should not be permitted to continue attempting to deceive the Court, and inMusic is the only party that should be sanctioned.

## V.  CONCLUSION

For the foregoing reasons, the Court should deny inMusic's motion to strike and request for sanctions.

Dated: February 16, 2023

Respectfully submitted,

By:  /s/ *Laura Ganoza*
**FOLEY & LARDNER LLP**

Laura Ganoza
Florida Bar No. 118532
One Biscayne Tower, Suite 1900
2 South Biscayne Boulevard
Miami, Florida 33131
(305) 482-8400
(305) 482-8600 (fax)
lganoza@foley.com

Justin B. Uhlemann (FBN 568872)
juhlemann@foley.com
One Independent Drive
Suite 1300
Jacksonville, Florida 32225
Telephone: 904.359.2000
Facsimile: 904.359.8700

Victor de Gyarfas Esq. (*pro hac vice*)
555 South Flower Street, Suite 3500
Los Angeles, CA 90071
(213) 972-4500
(213) 486-0065 (fax)
vdegyarfas@foley.com

*Attorneys for Roland Corporation*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on **February 16, 2023**, a copy of the foregoing was electronically filed with CM/ECF, which will effect service on all counsel of record identified below.

                                          */s/ Laura Ganoza*
                                              Laura Ganoza

Joseph Bain
*jbain@shutts.com*
SHUTTS & BOWEN
525 Okeechobee Boulevard
Suite 1100
West Palm Beach, Florida 33401
Telephone: 561.650.8523
Facsimile: 561.650.8350

Craig M. Scott (*pro hac vice*)
*cscott@hinckleyallen.com*
Christine K. Bush (*pro hac vice*)
*cbush@hinckleyallen.com*
Laurel M. Gilbert (*pro hac vice*)
*lgilbert@hinckleyallen.com*
HINKLEY, ALLEN & SNYDER, LLP
100 Westminster Street
Suite 1500
Providence, Rhode Island 02903
Telephone: 401.274.2000
Facsimile: 401.277.9600

*Counsel for Defendant inMusic Brands, Inc.*

4871-1338-4529